*In re* MARRIAGE OF SHARON E. JASTER, Petitioner-Appellant, and LEONARD J. JASTER, Respondent-Appellee.

Second District   No. 2—91—0229

Opinion filed December 11, 1991.

Elizabeth L. Krueger, P.C., of Wheaton (Elizabeth L. Krueger, of counsel), for appellant.

Anderson & Deitsch & Associates, P.C., of Wheaton (Stephen M. Deitsch, of counsel), for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The petitioner mother, Sharon E. Jaster, appeals from the trial court's orders related to the children born to her and her former husband, the respondent father, Leonard J. Jaster. She argues that the court abused its discretion (1) in refusing her petition to remove the children to Georgia; (2) in refusing to order the father to pay her attorney fees; and (3) in granting the father tax exemptions for the children. We affirm.

The parties were married in November 1978. Their three children were born in 1981, 1983, and 1985. In April 1989, the mother petitioned for dissolution of the marriage. In October 1989 she petitioned for leave to remove the children from Illinois. In December 1989, the dissolution hearing was continued to June 1990.

In January 1990, the mother moved the children to Georgia to accept a teaching job there. The move was without leave of court, and the father sought and received a court order for her return. The father also petitioned for custody of the children. The mother and children returned to Illinois pursuant to court order.

In February 1990, the court heard the mother's removal petition. The bulk of testimony was received from the parties; the mother's expert, clinical social worker and social work professor Sarah E. Bonkowski; and the father's expert, psychologist Robert B. Shapiro. At the conclusion of the hearing, the court denied removal. The mother brought this appeal. She first challenges whether the court's denial of removal was against the manifest weight of the evidence. A somewhat detailed review of the evidence is relevant to this issue.

Doctor Bonkowski, who had met with the mother and the children but not with the father, opined that "it would be all right" for the children to leave Illinois with their mother. As a basis for her opinion, Dr. Bonkowski referred to the following: (1) that in Georgia the mother had plans for teaching; (2) that it seemed the mother and the children could be together more and under less financial stress in Georgia; (3) that the mother had found good quality day-care at a cost lower than in the Chicago area; (4) that the Georgia move would be to a college town where the mother could pursue a master's degree; (5) that although the children express affection for and enjoyment of their father, their primary attachment is apparently to the mother and to each other.

Dr. Bonkowski further observed that the children would miss their friends in Illinois. She also observed that the children were not under treatment for serious health problems.

Bonkowski acknowledged the family's closeness to one local aunt and cousin, the local presence in Illinois of the mother's parents, brothers, nieces and nephews, and grandmother. She also acknowledged her knowledge of some strained relations between the father and the mother's relatives. Regarding the evolving family, Bonkowski observed that the mother had expressed both a desire for the children to have a good relationship with the father and willingness for him to have extended visitation during the summer. She concluded that the move would be healthy for the children.

Dr. Shapiro testified that he had been appointed by the court to participate in conciliation meetings with the parties. In that connection, he had had contact both with the parents and with all the children. He had met with family members on approximately eight days and had administered the Minnesota Multiphasic Personality Inventory to the parties. Based on his evaluation, Dr. Shapiro recommended that the children should remain in Illinois, that the mother should have custody, and that there should be liberal visitation with the father.

Dr. Shapiro testified that he based his recommendation on the children's attachment to the father. He also acknowledged that he was no expert in the matter, but that he also had considered his feeling that the mother could locate employment in Illinois. He did not think that leaving Illinois would better the children in any way.

Dr. Shapiro stated that the parties were vocal about their having a poor relationship. He had observed angry behavior by the mother towards the father. Also, he questioned the value of Dr. Bonkowski's evaluation because she had not met with the father. He did not know how one could evaluate the critical issue of the attachment between parent and child without talking to each parent and seeing the child interact with each parent.

The mother testified that she is a trained elementary school teacher and that she has no other training. She and the children live in the family's three-bedroom house in Carol Stream. She testified that around the time she and the father separated, she applied for teaching jobs at 11 public school districts in the west-suburban area near the family home. She also sent letters to individual principals in the two largest and fastest-growing of those districts. Additionally, she had taken some continuing education and graduate courses. She had received no response to her applications.

The mother also had traveled to some smaller Illinois communities a distance away from her home. She found housing costs comparable to her current costs and chose not to apply to those areas or to any other places in Illinois. She also sent employment inquiry letters to 10 major corporations, to At-Home Data Entry, and the military services.

The mother further testified that in August 1989 she began seeking a teaching job in Georgia. She had lived in Georgia until age 12, and she felt strong family connections there; her relatives there include several cousins and two or three aunts and uncles. She testified that she had secured full-time employment as a chapter I reading teacher, earning $20,000 annually. She had plans for the children's

school and day-care in Georgia and had arranged that they would live in a three-bedroom house that her parents had purchased.

The mother acknowledged that it would be better for her and the children to remain in Illinois if she could obtain a teaching position and if she had sufficient funds to continue to live in the marital residence. However, according to the mother the Georgia move was in the children's best interest because of its financial and mental consequences for her. She agreed to the father's frequent visitation with the children and denied that she wanted to move to Georgia to keep the children away from him.

The father testified that his gross income as a police officer was $39,942. He testified to his frequent visitation with the children since the parties separated, and he stated that he preferred to have sole custody of the children. He thought it was in the children's best interest for him to have that custody. He had inquired about day-care for the children if they remained in the Carol Stream area. Also, he stated that if the court allowed the mother to remove the children to Georgia, he would try to visit the children there once each month.

The court found that the mother was the preferable parent for temporary and permanent custody of the children. Among the mother's motivations for requesting removal, the court found fear of a lowered standard of living and social stigma felt by the children, day-care concerns, and desire to shield the children from the parents' new relationships. The court additionally found that although the move to Georgia would certainly enhance the mother's and the children's short-term quality of life, there was no guarantee that the mother would have continuing employment in Georgia or, more specifically, at the school where she had suggested that the children could be students. The court additionally noted that the new Georgia house and residence in a university town were results of the mother's parents' generosity.

The court found that the mother had made no sincere attempts to secure Illinois employment outside Du Page County. It also found that the father wants regular, uninterrupted visitation with the children and that he fears the mother may interfere with his visitation rights if she is allowed to remove the children. According to the court, the only detriment to the children in a move to Georgia would be the possible diminution of their attachment to their father. The court found that if the move were approved, the father's visitation rights would be seriously impaired as the parties' proposed visitation schedule was cost-prohibitive, unrealistic, and unworkable.

The court noted that since the separation, the father had had constant involvement with the children and that nearly all the children's extended family live in the Du Page County or Cook County area. It concluded that removal would not serve the best interest of the children and denied the request.

■ In her argument that the court's denial of removal was against the manifest weight of the evidence, the mother refers frequently to the leading Illinois case on removal of children from the State: *In re Marriage of Eckert* (1988), 119 Ill. 2d 316. In *Eckert*, the supreme court analyzed section 609 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1989, ch. 40, par. 609) and applicable case law. It noted that in removal cases the best interest of the child is paramount and that the parent seeking removal has the burden to prove that removal is in the best interest of the child. (*Eckert*, 119 Ill. 2d at 324-25.) The court emphasized that removal cases require case-by-case analysis, and it listed factors aiding a trial court's determination of a child's best interest. Those factors included the following: (1) the likelihood that the move will enhance the general quality of life for both the custodial parent and the child; (2) the custodial parent's motivation for seeking removal and the other parent's motivation for opposing removal; and (3) whether a realistic and reasonable visitation schedule can be reached if the move is allowed. 119 Ill. 2d at 326-27.

In its decision, the *Eckert* court specifically noted that it is in a child's best interest to have a healthy and close relationship with both parents, as well as other family members, so that the visitation rights of the noncustodial parent should be carefully considered. (119 Ill. 2d at 327.) The court distinguished cases where a parent had not exercised his visitation rights, and it emphasized the Act's policy of securing "maximum involvement and cooperation of both parents regarding the physical, mental, moral and emotional well-being of the children." (119 Ill. 2d at 327-28.) It noted that the trial court's determination of a child's best interest should not be disturbed unless it was "clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred." 119 Ill. 2d at 328.

■ We have reviewed the evidence in light of the strict standard of *Eckert* and have considered the mother's argument that she sustained the burden of satisfying the *Eckert* factors and showing that a move to Georgia would be in the best interest of the minor children. Despite the fact that the mother sought removal prior to the order of dissolution, we find no basis to disturb the decision of the trial court in this case.

The evidence here showed, as the court acknowledged, that a move to Georgia would have short-term benefits for the mother and the children. Also, there was no significant showing that the mother's motivation to move was to interfere with the father's visitation. Additionally, the parties had proposed a visitation schedule in the event of a Georgia move. On the other hand, the evidence also showed that the father had exercised his visitation rights with the children and that the children had a positive relationship with him. It also showed the father's limited financial resources to cover substantially increased visitation costs and the mother's questionable willingness to provide accommodation for frequent Georgia visits by the father.

Considering that evidence, evidence of support from family and friends in the Chicago area, and evidence of the mother's specific efforts to locate Illinois employment, we do not find that the trial court's conclusion was clearly against the manifest weight of the evidence or that it appears that a manifest injustice has occurred. While the mother's evidence may have supported a contrary conclusion by the trial court, the evidence also supports the conclusion before us on review.

■ The second argument presented by the mother is that the trial court abused its discretion in denying her petition for attorney fees. Under section 508(a) of the Act, the court may order either spouse to pay a reasonable amount for his ex-spouse's attorney fees. (Ill. Rev. Stat. 1989, ch. 40, par. 508(a).) A party seeking an award of attorney fees must show his own inability to pay and his ex-spouse's corresponding ability to pay. (*In re Marriage of Stadheim* (1988), 170 Ill. App. 3d 19, 25.) The awarding of fees is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 299.

■ In this case the trial court found that neither party had the ability to pay the reasonable attorney fees that had been charged. Accordingly, it declined to assess fees against either party. Supporting the court's determination that the father lacked ability to pay, the record shows that from an after-tax income of $2,854 per month, the father was obligated to pay $1,000-per-month child support, $500-per-month maintenance, 50% of the children's day-care expenses, plus a variety of other obligations including the children's extraordinary medical expenses, life insurance for the children's benefit, reimbursement of the mother for sale of a vehicle, and a share of the family's several thousands of dollars of assorted financial obligations. Considering this evidence, we find that the court's conclusion that the father

lacked the ability to pay a portion of the mother's attorney fees, and its resulting denial of an attorney fee award, was not an abuse of discretion.

■ The final argument presented by the mother is that the trial court abused its discretion in granting the father the right to claim tax exemptions for the three children. In her argument on this issue, the mother includes no citation of authority. Thus, she has not complied with the rules governing briefs (134 Ill. 2d R. 341(e)(7)), and we will not consider this improperly presented argument. See *Brown v. Broadway Perryville Lumber Co.* (1987), 156 Ill. App. 3d 16, 21-22.

Based on the foregoing, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

DUNN and WOODWARD, JJ., concur.