*In re* MARRIAGE OF RENEE MIROBALLI, Petitioner-Appellant, and JO-
SEPH MIROBALLI, Respondent-Appellee.

First District (4th Division)   No. 1—90—1886

Opinion filed December 26, 1991.—Modified on denial of
rehearing March 26, 1992.

Dan Walker, Jr., of Chicago, and Cesario & Walker, of Hinsdale (Kath-
leen M. Vaught, of counsel), for appellant.

Kaufman, Litwin & Gitles and Anesi, Ozmon & Rodin, Ltd., both of Chi-
cago (Glen Kaufman, Stuart N. Litwin, and Richard A. Kimnach, of coun-
sel), for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Petitioner, Renee Miroballi (now Renee Gandy), appeals from a directed verdict of the circuit court of Cook County denying her petition for leave to remove the parties' two minor children from Tinley Park, Illinois, to Farmington Hills, Michigan. The only issue on appeal is whether the trial court's finding that the best interests of the children are served in denying the petition for removal is against the manifest weight of the evidence.

We reverse and remand.

Petitioner and respondent, Joseph Miroballi, were married on March 6, 1977, and divorced on April 22, 1987. The judgment of dissolution of marriage provided for joint custody of the parties' two minor children, Joseph Jr. and Craig. The children live with petitioner, and respondent is granted visitation. In July 1989, petitioner married James Gandy, who works and lives in Farmington Hills, Michigan. Petitioner filed a petition for leave to remove the children from Illinois to Michigan. The basis of removal was that petitioner would like to live with both her husband and children full time.

Respondent testified that he is a practicing attorney in Chicago. He further stated that his schedule requires that he work Monday through Friday, and two or three times per month on Saturday mornings. Under the terms of the joint custody agreement, respondent may see his children (1) on alternate weekends from 5 p.m. Friday until 7 p.m. Sunday; (2) one weekday per week from 4 p.m. to 8:30 p.m.; (3) during graduations and other school activities; (4) on their birthdays, on his birthday (for a reasonable time), and on Father's Day; (5) for half of the children's Christmas vacation; (6) for half of the children's summer vacation; and (7) for all of Easter vacation in alternate years.

Respondent stated that he spends alternate weekends with the children. He also stated that he has attended a few of their baseball games and school activities and has seen them on special holidays. On cross-examination, respondent testified that he has never taken the children for part of their Christmas or summer vacations and has never regularly visited with the boys one weekday evening per week. He further testified that he has not consistently visited the children each year on their birthdays.

Petitioner testified that she and the parties' two children live in a single-family townhouse located in Tinley Park, Illinois. She further stated that Joseph Jr. is in the seventh grade at Central Junior High School and that Craig is in the third grade at Sandich Grade School. The witness stated that both schools offer a general curriculum and

are struggling to keep up with the national average. Both children have participated in Saturday morning bowling leagues, floor hockey, and little league baseball. The children also attend religious education classes during the weekends. Petitioner stated that she has maintained full responsibility for enrolling and taking the boys to religious classes and recreational activities.

Petitioner testified that if the children were permitted to live in Farmington Hills, they would live in a larger home and in a neighborhood that has more children in their age group. She stated that the community has an active park district which offers a wide variety of recreational activities for children, including sporting and nonsporting programs. The witness also presented evidence to suggest that the children would receive a higher quality education if they were permitted to relocate to Farmington Hills. In national testing, the Farmington Hills schools' mean score is in the 75th percentile, with the national average being in the 50th percentile. Petitioner stated that she has worked as a special education teacher in Burbank, Illinois, for 13 years. She stated that if she could live with her husband in Michigan she would stop working and devote her time to her family.

Petitioner's new husband, James Gandy, owns and operates his own business as an independent sales representative for lighting manufacturers. Gandy has maintained an office in and around Farmington Hills, Michigan, for the past 2½ years. His annual income is $80,000. Gandy testified that his sales territory encompasses lower Michigan and northern Ohio. The witness stated that he cannot live in Chicago and continue to service his clients. He stated that he spends five days driving around his territory and one day in the office. He returns to his Farmington Hills home at the end of each day.

During the hearing on the petition for removal, the court found that neither parent's motives were improper with regard to either seeking or restricting removal of the children from Illinois. The court found that respondent had exercised visitation rights on a basis consistent with his profession (as an attorney) and work schedule. The court further found that petitioner had not presented any concrete evidence to compare the quality of life in Michigan over that in Illinois in relation to the schools, parks, and community services. The court granted respondent's motion for a directed verdict, finding that petitioner had not met her burden of proving removal was in the best interests of the children. This appeal followed.

■ Section 609 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1989, ch. 40, par. 609(a)) governs petitions for removal. This section provides:

"The court may grant leave, before or after judgment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children. *The burden of proving that such removal is in the best interest of such child or children is on the party seeking the removal."* (Emphasis added.) Ill. Rev. Stat. 1989, ch. 40, par. 609(a).

■ The Illinois Supreme Court in *In re Marriage of Eckert* (1988), 119 Ill. 2d 316, examined the application of section 609 of the Act. The court recognized that "[a] determination of the best interests of the child cannot be reduced to a simple bright-line test, but rather must be made on a case-by-case basis, depending, to a great extent, upon the circumstances of each case." (*Eckert*, 119 Ill. 2d at 326.) The court set forth factors to assist the trial court in determining whether the party seeking removal has satisfied the burden of proving that such removal is in the best interests of the child.

"These factors are: (1) the likelihood of enhancing the general quality of life for both the custodial parent and the child by allowing the move; (2) the motives of both parents: the motive of the custodial parent in seeking removal and the motive of the noncustodial parent in resisting the removal; and (3) the visitation rights of the noncustodial parent, which involves a determination of whether a realistic and reasonable visitation schedule can be reached if the move is allowed." (*In re Marriage of Zamarripa-Gesundheit* (1988), 175 Ill. App. 3d 184, 188, citing *Eckert*, 119 Ill. 2d at 326-27.)

The trial court's decision as to what is in the best interests of the child should not be reversed unless it is against the manifest weight of the evidence. *Eckert*, 119 Ill. 2d at 328.

First, we consider the likelihood of enhancing the general quality of life for the children as well as the custodial parent. We believe that the quality of life of the children and respondent will be directly enhanced by permitting removal to Farmington Hills, Michigan. Petitioner testified that if she moves, she would not have to work. She would be free to focus on and spend more time with her children and her husband. In addition, she would no longer have to maintain two households. We believe this change will directly enhance the children's quality of life. We agree with petitioner that being united with her husband in the same location as her children will more than likely enhance her happiness, her well-being, and her general disposition.

Petitioner presented evidence suggesting that the children's lives would be enhanced by relocating to Michigan, because they would re-

ceive a better education and would live in a nicer neighborhood. However, we give deference to the trial court's finding that the children's lives with regard to these factors would not be any better in Michigan than in Illinois. We are satisfied that, all else being equal, the children's general quality of life will be directly enhanced by the mother not having to work and by living in a traditional family setting.

We also believe that the children's quality of life would be indirectly enhanced by moving to Michigan. This court has consistently recognized that where the general quality of life for the custodial parent is enhanced the child's quality of life is indirectly enhanced. *In re Marriage of Carlson* (1991), 216 Ill. App. 3d 1077, 1081; *In re Marriage of Taylor* (1990), 202 Ill. App. 3d 740, 745; *In re Marriage of Zamarripa-Gesundheit* (1988), 175 Ill. App. 3d 184, 189; *In re Custody of Arquilla* (1980), 85 Ill. App. 3d 1090, 1093.

Having acknowledged that petitioner will be happier by moving, it is reasonable to conclude that the children's lives will be indirectly enhanced. In *Carlson,* the court addressed a similar situation and stated the following:

"[T]he principal indirect benefit to the children of granting the petition to remove would derive from the effect on their mother from the establishing of a new and successful marriage relationship. The mother's quality of life would be significantly improved, both by being able to live with her new husband and by not needing to work outside the home. In the new arrangement the mother would have the time and energy to be a part of her children's life in ways that had not been possible in the past, which would certainly enhance the mother's quality of life." (*Carlson,* 216 Ill. App. 3d at 1081.)

"Because [petitioner] wants to be with her husband, we can only conclude that the couple and therefore the family which consists of [the children] will be happier by allowing removal." (*Zamarripa-Gesundheit,* 175 Ill. App. 3d at 189.) We therefore find that the children's general quality of life will be indirectly enhanced by permitting removal.

Next, we consider the motives of the parents. There were no allegations that the motives of the parties in either seeking or resisting removal were improper. Nor was there evidence in the record to suggest improper motives. We therefore need not address this factor.

We must now consider respondent's visitation rights and address whether a realistic and reasonable visitation schedule can be reached.

■ The record establishes that the parties have been flexible with regard to respondent's visitation rights in the past. Petitioner stated

that if removal is permitted a liberal visitation schedule could be arranged, suggesting (1) half of Christmas vacation; (2) Easter vacation; (3) half of the summer; (4) three-day weekends during the school year; and (5) any other alternative that could be arranged. Petitioner also testified that she was willing to share in the financial cost of transportation for visitation, including airline travel. Respondent contends that the proposed schedule is unreasonable because he works "for all or part of six days a week" and his free time is limited to weekends, court holidays, and vacations. He further argues that no reasonable and realistic visitation can be fashioned with the children residing in Michigan.

It is apparent that respondent has enjoyed a close and loving relationship with his two sons, albeit he has not exercised his visitation rights to the fullest extent. However, preserving the children's relationship with their father must be weighed against the enhancement of the quality of life for both the mother and her children. (*In re Marriage of Zamarripa-Gesundheit* (1988), 175 Ill. App. 3d 184, 190.) "On balance, we do not think that the interests of the custodial mother should be subordinated to those of the noncustodial father." *Zamarripa-Gesundheit*, 175 Ill. App. 3d at 190.

Although the children would no longer live in the same city with their father, they would live close enough to spend time with him and maintain ties with their extended family. There are hourly flights from Detroit to Chicago and a round-trip ticket costs about $45. The visitation schedule may not always be convenient; however, we believe it provides a workable means for respondent to preserve and foster his relationship with his children.

In view of the facts stated above, the balance of the record, and in light of the factors set forth in *Eckert*, we find that the trial court's decision denying the petition for removal was against the manifest weight of the evidence. We therefore reverse the trial court's ruling denying the petition for removal and remand the cause for further hearing consistent with this opinion.

Reversed and remanded.

JIGANTI, P.J., and McMORROW, J., concur.