*In re* MARRIAGE OF JANET A. CREEDON, Petitioner-Appellant, and TIMOTHY J. CREEDON III, Respondent-Appellee.

Third District   No. 3—92—0425

Opinion filed June 3, 1993.

Roger B. Gomien, of Gomien, Root & Rigazio, of Morris, and Karen K. Jesiolowski, of Coal City, for appellant.

Melvin H. Hoffman, of Hoffman, Mueller, Creedon & Twohey, of Ottawa, for appellee.

JUSTICE COOK delivered the opinion of the court:

Petitioner Janet Creedon filed a petition in the circuit court of La Salle County, seeking leave to remove the parties' minor children to the State of Texas. Her former husband, respondent Timothy J. Creedon, objected. The trial court denied the petition and petitioner appeals. We affirm.

Petitioner and respondent were married in August 1976. They have two minor children, Timothy, born August 7, 1978, and Kyle, born May 23, 1980. On January 6, 1992, the trial court entered an agreed judgment for dissolution of marriage awarding joint custody to the parties, with physical custody of the children to petitioner. Fifteen days later, on January 21, petitioner filed a petition for leave to remove the children from the State of Illinois pursuant to section 609 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1991, ch. 40, par. 609).

At the hearing, petitioner, age 45, testified she currently resides in Ottawa, Illinois, with her two children. Petitioner moved to Ottawa, respondent's hometown, after her marriage and resided there during most of the marriage and all of the children's lives. Petitioner desires to move to Burleson, Texas, where her only sibling, a brother, resides. Burleson is about 30 minutes from Dallas and has a population of 20,000. It is located about 6½ hours from Burton, Kansas, where petitioner was raised and where her parents still reside. Petitioner has maintained close contact with her brother and parents even though they are a 12-hour drive from Ottawa. Timothy and Kyle have regularly traveled to see petitioner's family during Christmas and other holidays and have developed a good relationship with them. Petitioner's brother has two sons near in age to Timothy and Kyle, and the cousins enjoy playing together.

Petitioner stated that respondent left the marital home in May 1991. He initially agreed to allow petitioner to move to Texas with the children, and she began investigating the Burleson area during that summer. Petitioner believed respondent changed his mind in October 1991. She testified that respondent exercised visitation with the children sporadically during the summer and fall of 1991 but has regularly kept the children every other weekend since January 1992.

Petitioner, an elementary school teacher, initially desired to move to Kansas but found her opportunities for employment more favorable in Texas. She has taught full-time in Ottawa since 1985 and has an excellent reputation with peers and parents. She currently earns $31,961, which would increase to $32,700 next year. Petitioner would

then be frozen at that level for eight years unless she completes additional college credit hours. She has 21 hours toward her master's degree but needs 36 hours to be eligible for a higher salary. Although the appropriate courses may at some time be offered locally, she would most likely have to drive to De Kalb for the courses, 45 miles from Ottawa. Petitioner is tenured in her present position.

Petitioner recently visited Burleson and inquired into available teaching positions there. She submitted into evidence a letter from the Burleson School District which stated that she had an excellent chance for employment and with her work experience she would probably begin at $29,500. The Burleson district has a merit ladder for which petitioner would be eligible after one year. Petitioner could receive a $1,500 bonus for favorable testing scores. After teaching in the Texas school system for five years, she could also earn $3,000 over her base salary with high points on evaluations and extra coursework. The appropriate classes are available at a college 20 minutes from Burleson.

Petitioner investigated Burleson schools for Timothy and Kyle and found them to be of comparable quality to those in Ottawa. The children would also benefit from the opportunity to play on a junior high school tennis team, an opportunity not available in Ottawa. Petitioner looked at houses in several locations and found busing to be convenient for the children. Petitioner compared housing, food, taxes, and other community services and found the cost of living to be comparable or less than in Ottawa. Petitioner proposed a visitation schedule if allowed to move to Texas. She suggested the children stay with respondent for an extended period of five or six weeks during the summer and additionally for the longer breaks during the school year. The record indicates petitioner has never interfered with respondent's scheduled visitations.

Respondent, age 39, testified he is a practicing attorney in Ottawa. He has been granted and has regularly exercised visitation with the children on alternate weekends since the dissolution. Respondent attends the children's sporting events, assists with coaching, and occasionally attends meetings with teachers. He admitted visitation does not always go well and characterized his children as "hesitant" when with him. He admitted their relationship was sometimes "stormy." On occasion, petitioner has had to be firm with the children about going to visitation with respondent because they did not want to go. Sometimes the children requested to go home early. Respondent admitted that petitioner usually puts the children's welfare before her own and that petitioner would be more at ease being close to her family.

The trial judge conducted *in camera* interviews with both Timothy and Kyle, but properly declined to ask the children directly where they preferred to live. We have carefully reviewed the *in camera* testimony and choose not to discuss it further here. The *in camera* testimony adds little to the other testimony presented at trial; unnecessarily revealing it would destroy one of the reasons for taking the testimony *in camera* in the first place, and it is important that children not be forced to choose between their parents (or led to believe that it is their decision which is controlling). Of course children sometimes have something which they very much wish to say and, in those cases, the trial court should be available for an *in camera* hearing.

The trial judge denied the petition for removal. The judge found some familial benefits and possible future career benefits in moving and indicated petitioner's motives in relocating were sincere. She commented that "Wherever they (the children) live with their mother I'm confident that they will be well taken care of and very happy." However, she found it compelling that the move would affect the stability of the children since they have many friends in Ottawa. The judge concluded that the children need to maintain significant contact with both parents, and with their friends in Ottawa as well. The judge found no realistic or reasonable visitation schedule was available should petitioner move with the children to Texas.

Removal of a child from Illinois by the custodial parent is governed by section 609 of the Act, which provides in part:

> "The court may grant leave, before or after judgment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children. The burden of proving that such removal is in the best interests of such child or children is on the party seeking the removal. When such removal is permitted, the court may require the party removing such child or children from Illinois to give reasonable security guaranteeing the return of such children." Ill. Rev. Stat. 1991, ch. 40, par. 609(a).

In interpreting this Act, it is relevant to consider that the children of divorced parents are a disadvantaged group even under ideal circumstances. It is important for divorced parents to work together to lessen the impact of their problems upon their children. Unfortunately, children are often the only thing left for divorced parents to fight over. We do not suggest that is the case here, but the possibility is one which must be kept in mind in all cases.

There are strong arguments on each side of the question whether a custodian should be able to remove a child from the State. The child's visitation with the noncustodian is important, not just for the noncustodian, but for the happiness and successful development of the child. (*In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 327-28, 518 N.E.2d 1041, 1045-46.) A custodian should not be allowed to employ removal as a weapon, especially in light of the severe statutory limitations placed upon restriction or termination of visitation. (Ill. Rev. Stat. 1991, ch. 40, par. 607(c).) On the other hand, noncustodians should not be allowed to use objections to removal to satisfy their spite or as a bargaining chip. Noncustodians need not seek leave of court to move out of State, or to marry persons living out of State, and that fact should be considered when a custodian seeks to do the same. *Cf. In re Marriage of Berk* (1991), 215 Ill. App. 3d 459, 465, 574 N.E.2d 1364, 1368 ("Custodial parents and their spouses must remember that they do not make decisions in a vacuum. Decisions must be made in an environment in which the best interests of the children are paramount").

Some divorce rights advocates see this issue in absolute terms and feel that removal should usually, or rarely, be allowed, depending upon the group for which they are advocates. (See, *e.g.*, Toback, "Removal: A Historical and Practical Perspective," 1992 Ill. Fam. L. Rep. 229.) It is important that the courts be evenhanded in deciding these cases. (See *In re Marriage of Carlson* (1991), 216 Ill. App. 3d 1077, 1082, 576 N.E.2d 578, 581 ("[t]he inquiry becomes not what is 'fair' or 'unfair' for each parent, but what is best for the affected children").) Complaints about the unpredictability of these decisions, and the lack of black-letter rules, to some extent reflect a refusal to accept that the resolution of these cases requires a balancing process. The supreme court has wisely refused to take a one-sided approach: "A determination of the best interests of the child cannot be reduced to a simple bright-line test, but rather must be made on a case-by-case basis, depending, to a great extent, upon the circumstances of each case." *Eckert*, 119 Ill. 2d at 326, 518 N.E.2d at 1045.

Among the factors which *Eckert* saw as especially significant was the "likelihood [of the move] for enhancing the general quality of life for both the custodial parent and the children." (*Eckert*, 119 Ill. 2d at 326-27, 518 N.E.2d at 1045.) It is significant that custodial parent and children are both mentioned in that sentence; it is sometimes difficult to consider what is good for one without considering what is good for the other. It is not always necessary, on a petition for leave to remove, to show some direct benefit to the children. (*Carlson*, 216 Ill.

App. 3d at 1081, 576 N.E.2d at 580; *In re Marriage of Ballegeer* (1992), 236 Ill. App. 3d 941, 945, 602 N.E.2d 852, 855; *In re Marriage of Miroballi* (1991), 225 Ill. App. 3d 1094, 1098, 589 N.E.2d 565, 568.) "[I]f the best interests of the children *would not be affected* by a move to another State, the custodial parent should be free to move." (Emphasis added.) (*Eckert,* 119 Ill. 2d at 327, 518 N.E.2d at 1046.) The court is also to consider the motives both of the custodial parent and of the noncustodial parent. Some courts have stated that where the record contains no evidence of motive, the motive factor need not be considered. (See, *e.g., In re Marriage of Davis* (1992), 229 Ill. App. 3d 653, 661, 594 N.E.2d 734, 739; *Miroballi,* 225 Ill. App. 3d at 1098, 589 N.E.2d at 568.) Motive may also be considered in evaluating credibility of witnesses. The decision to be made in these cases is one especially within the province of the trial court. "A trial court's determination of what is in the best interests of the child should not be reversed unless it it clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred." *Eckert,* 119 Ill. 2d at 328, 518 N.E.2d at 1046.

A custodian's petition for removal and a noncustodian's petition to change custody must be decided under different sections of the Act, and there is potential for confusion if the two petitions are ruled upon at the same time. In *Ballegeer,* for example, the trial court granted a change of custody without considering the petition for leave to remove. Even if the petition for leave to remove would have been denied, the custodian had the right to decide to remain in the State and retain custody. (See also *In re Marriage of Benson* (1991), 217 Ill. App. 3d 564, 567, 577 N.E.2d 867, 870 (if a custody petition is unrelated to a removal petition, a trial court is not required to rule on the removal petition first).) Nevertheless, where the custodian will choose to leave the State without the children if the petition for removal is denied, a trial court which does not consider whether the children are better off out of State with the custodian, or in State with the noncustodian, is ignoring reality. In *Berk* the court stated, "Karen has made her choice to move to Humboldt. She must now live with the consequences of that decision." (*Berk,* 215 Ill. App. 3d at 465, 574 N.E.2d at 1368.) It is certainly true that courts should not be intimidated by "irrevocable" actions of parents, and that custodians must live with the consequences of their decisions. Still a court must not abandon consideration of the best interests of the child when a parent whom the court would prefer remain in the State of Illinois determines for his or her own reasons to leave.

Stability is important for divorced children, as manifested by several provisions of the Act. (Ill. Rev. Stat. 1991, ch. 40, pars. 602(a)(3), (a)(4), 610.) Moving children to another State is often disruptive, but children in intact families move from one State to another without any court involvement. Visitation with the noncustodial parent is important. "When a parent has assiduously exercised his or her visitation rights, 'a court should be loath to interfere with [those visitation rights] by permitting removal of the children for frivolous or unpersuasive or inadequate reasons.' " (*Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1046.) Regularity of visitation, as opposed to the total number of days per year, may be important. In some cases a longer, uninterrupted period of visitation might have advantages over short but regular visitation (*In re Marriage of Gratz* (1989), 193 Ill. App. 3d 142, 548 N.E.2d 1325), but that is probably exceptional. Large blocks of consecutive visitation may be traumatic to children. (*Coons v. Wilder* (1981), 93 Ill. App. 3d 127, 131, 416 N.E.2d 785, 790; *In re Marriage of Bush* (1989), 191 Ill. App. 3d 249, 264, 547 N.E.2d 590, 598 (custodial parent should be allowed contact with the child during lengthy periods of visitation).) Visitation is meant as a benefit to the child, not as an entitlement which the noncustodian may insist upon at all costs. Visitation which takes a child away from his friends and activities during an entire summer may be worse for the child than no visitation at all.

It is striking that the parties here agreed that a judgment of dissolution would be entered in which they would have joint custody, and petitioner was awarded the marital residence, but 15 days later petitioner sought leave to remove the children from the State. It seems obvious that petitioner sought to obtain the benefits of the agreed order but not bear the burdens, at least as far as the agreement contemplated that petitioner would continue to reside in Ottawa. Whatever other remedies respondent may have, however, it is clear that petitions for leave to remove are governed by section 609 of the Act, despite the fact that joint custody has been agreed to or awarded. (*In re Marriage of Yndestad* (1992), 232 Ill. App. 3d 1, 7, 597 N.E.2d 215, 219; *In re Marriage of Taylor* (1990), 202 Ill. App. 3d 740, 744, 559 N.E.2d 1150, 1152.) Still, to the extent that an order of joint custody actually reflects a closer than customary relationship between the noncustodian and the child, the existence of a joint custody order may be considered in determining whether removal is in a child's best interests. *Yndestad*, 232 Ill. App. 3d at 7, 597 N.E.2d at 219; *In re Marriage of Bednar* (1986), 146 Ill. App. 3d 704, 711, 496 N.E.2d 1149, 1153.

The trial court could properly have found here that no compelling reasons justified petitioner's proposed move. Petitioner testified to future economic benefits which could be available, but for the most part the move would appear to be a lateral one. Petitioner has a good job in Ottawa and is well thought of by her employers. This is not a case like *In re Marriage of Good* (1991), 208 Ill. App. 3d 775, 778, 566 N.E.2d 1001, 1003, where the court commented that custodial parents should not be expected to give up careers for the sake of remaining in the same geographical location. We recognize that Ottawa is respondent's hometown and that petitioner moved there only after the marriage. Nevertheless petitioner has resided in Ottawa for a substantial period of time, has adapted well and made friends, and Ottawa is the only home the children have known. We understand petitioner's desire to be near her parents, but petitioner does not propose to move to the town where her parents reside, but to a location some 6½ hours distant. In some of the reported cases the custodian is placed in a quandary, whether to remain in Illinois with her children, or to leave the State to be with a new spouse who has ties to another State. That quandary is not present here. The trial court could properly have found that lengthy summer visitation, and infrequent visitation on other occasions, would not be a satisfactory substitute for the regular visitation which now exists. The fact that problems exist between the children and respondent may be another reason for not allowing a lessened visitation schedule. The language of *Jaster* applies here as well: "While the mother's evidence may have supported a contrary conclusion by the trial court, the evidence also supports the conclusion before us on review." *In re Marriage of Jaster* (1991), 222 Ill. App. 3d 122, 128, 583 N.E.2d 659, 663.

Affirmed.

KNECHT and GREEN, JJ., concur.