*In re* MARRIAGE OF CYNTHIA L. DECKARD, Petitioner-Appellee, and STEPHEN BRUCE DECKARD, Respondent-Appellant.

Fourth District   No. 4—92—0854

Opinion filed June 29, 1993.

Fuller, Hopp, McCarthy, Quigg & Byers, of Decatur (Glenn O. Fuller, of counsel), for appellant.

Wayne L. Bickes and Kurt B. Bickes, both of Bickes & Bickes, Ltd., of Decatur, for appellee.

JUSTICE COOK delivered the opinion of the court:

Cynthia L. Deckard (Cynthia) petitioned for leave to remove minor children from the State, pursuant to section 609(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1991, ch. 40, par. 609(a)). The trial court granted the petition on August 13, 1992; since that time Cynthia and the children have resided in Georgia. Respondent Stephen Bruce Deckard (Stephen) appeals. We affirm.

The parties have two children, Shaun, born October 30, 1977, and Christopher, born January 4, 1982. A judgment dissolving the parties' marriage was entered August 7, 1987. The judgment adopted an oral marital settlement agreement reached by the parties, and awarded joint custody, with Cynthia to have physical custody during the school year, Stephen to have physical custody during the summer, and each to have visitation while the other had physical custody. Both parties have remarried.

Cynthia testified she married Danny Lee Davis (Danny) June 18, 1992. Danny was working in Georgia at the time of the hearing and did not testify. The Davises have a daughter, Sara, born in 1988. Shaun and Christopher have a close relationship with Sara, and a good relationship with Danny. While Danny lived in Decatur, he worked as a carpenter for Kelly Construction Company, but he was laid off in 1991. After the layoff Danny was unable to find employment in the Decatur area, other than odd jobs. His unemployment benefits eventually ran out. In addition to his employment with Kelly Construction, Danny had done carpentry work in Decatur for a contractor friend, Bill Long, who in March 1992 relocated his business to

Gainesville, Georgia. Danny had lived in Gainesville before he met Cynthia. In May 1992 Long offered Danny full-time work in Gainesville. Danny declined, stating he would try to stick it out in Decatur a little longer. In July 1992 Long again offered Danny work in Gainesville, and this time Danny accepted. Danny earns $12 per hour in Gainesville; he previously earned $11 per hour working for Kelly Construction in Decatur.

Cynthia gave up working as a hairdresser after Sara was born, because of an arthritic condition in her hands. She received public aid for about a year. She worked at Cub Foods in 1989, but gave up that work when she was transferred to a night shift. Since that time Cynthia has sold crafts at craft shows, clearing approximately $3,000 per year. She has not had a job offer in Georgia, but has a job possibility through a friend. She has visited the schools the children would be attending, and collected the documents necessary for the children to enroll. Danny has rented a home in the Gainesville area.

Stephen testified he has two stepsons, ages 14 and 17, by his present marriage, and his stepsons have a close relationship with his sons. Stephen has regularly paid child support and exercised visitation. He opposes the move because it would result in his not seeing his sons as often. Stephen loves his sons, and regularly takes them hunting, fishing, and camping. These activities take place in the spring and fall, as well as the summer. Shaun and Christopher have many relatives in the Decatur area, but none other than the Davises in Georgia. Stephen is concerned that Christopher is shy and lacks self-confidence. Stephen would like to monitor that situation, but cannot do so if the boys move to Georgia.

The trial court entered a written order in which it made extensive findings. Among those findings was that the standard of living for Cynthia and the boys had deteriorated because of Danny's unemployment. The trial court also took judicial notice that Decatur had one of the highest unemployment rates in the State of Illinois. The trial court felt it was impossible for the Davises to maintain two residences, one in Georgia and one in Illinois. The trial court found that it would be best to keep Shaun, Christopher, and Sara together, that it was in the best interests of the boys that they remained with Cynthia, and that Cynthia should be granted leave for the move. The trial court awarded visitation so that the children would continue to be with Stephen during the entire summer vacation (an expansion of the previous order), and gave Stephen the entire Christmas and spring vacations as well. Cynthia was to be responsible for the children's transportation at the summer and Christmas vacations, but Stephen

was to be responsible for transportation at the spring vacation. It is not clear whether the order terminated the previous order awarding joint custody, but Stephen's time with Shaun and Christopher during the summers was now described as visitation, rather than physical custody.

Under section 609(a) of the Act, the burden is on the custodial parent to show that removal of the child from the State is in the best interests of the child. (*In re Marriage of Davis* (1992), 229 Ill. App. 3d 653, 660, 594 N.E.2d 734, 739.) A trial court's determination of what is in the best interests of the child should not be reversed unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred. (*In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 328, 518 N.E.2d 1041, 1046; *Davis*, 229 Ill. App. 3d at 660, 594 N.E.2d at 739.) A mere desire to move to another State, without more, is insufficient to show the move is in the best interest of the child, but a court should not confine its consideration only to the direct benefits a child may receive from removal. *Davis*, 229 Ill. App. 3d at 661, 594 N.E.2d at 740; *In re Marriage of Carlson* (1991), 216 Ill. App. 3d 1077, 1081-82, 576 N.E.2d 578, 580-81 (enhancement of general quality of life of mother); *In re Marriage of Creedon* (1993), 245 Ill. App. 3d 531, 535.

The supreme court has refused to take a one-sided approach to these questions, and has indicated that each determination must be made on a case-by-case basis. (*Eckert*, 119 Ill. 2d at 326, 518 N.E.2d at 1045; see *Creedon*, 245 Ill. App. 3d at 534-35.) In *Eckert* the supreme court stated:

> "There are *** several factors which may aid a trial court in determining the best interests of the child. The court should consider the proposed move in terms of likelihood for enhancing the general quality of life for both the custodial parent and the children. [Citations.] The court should also consider the motives of the custodial parent in seeking the move to determine whether the removal is merely a ruse intended to defeat or frustrate visitation. [Citations.] Similarly, the court should consider the motives of the noncustodial parent in resisting the removal. [Citations.] It is also in the best interests of a child to have a healthy and close relationship with both parents, as well as other family members. Therefore, the visitation rights of the noncustodial parent should be carefully considered. [Citations.] Another factor is whether, in a given case, a realistic and reasonable visitation schedule can be reached if the move is allowed." *Eckert*, 119 Ill. 2d at 326-27, 518 N.E.2d at 1045-46.

■■ Stephen argues Cynthia's evidence was not sufficient to prove removal of the boys was in their best interests, in part because they were not called as witnesses or examined *in camera*. Cynthia responds the boys were in the physical custody of Stephen at the time of the hearing, which was held during the summer, and he chose not to bring them to the hearing. Cynthia also points out that Stephen objected, on the basis of hearsay, to things which were said at a meeting where she and Stephen discussed the matter with the boys. Conscientious parents may choose not to subject their children to testifying, either in court or *in camera* (see *Creedon*, 245 Ill. App. 3d at 534) and should not be forced to do so where such testimony would be unnecessary. If the boys' testimony would have supported his position, Stephen could have called them as easily as could Cynthia. Her failure to call them does not weigh against her. (*Myre v. Kroger Co.* (1988), 176 Ill. App. 3d 160, 167, 530 N.E.2d 1122, 1126.) Although not an issue on this appeal, we note that children's statements as to whom they prefer as a custodian, or where they desire to live, are admissible under the state-of-mind exception to the hearsay rule. *In re Marriage of Gustafson* (1989), 187 Ill. App. 3d 551, 556, 543 N.E.2d 575, 578; *In re Marriage of Stuckert* (1985), 138 Ill. App. 3d 788, 790-791, 486 N.E.2d 395, 396-97; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §803.4, at 631 (5th ed. 1990).

Stephen complains Danny did not testify and further that it is not clear that employment was not available for Danny in the Decatur area. Stephen objected on the basis of hearsay to Cynthia's testimony about Danny receiving a job offer from Long, and what Long said to Danny in a telephone conversation on July 16 or 17. He also objected, on the basis of foundation for her knowledge, to Cynthia's answer to the question of what did she know about jobs available to her in Georgia. The trial court overruled both objections, and neither ruling is raised as an issue on appeal. These issues are important in leave to remove cases because their resolution may determine whether a party is required to go to the expense of producing witnesses from a faraway State. (See *Davis*, 229 Ill. App. 3d at 662, 594 N.E.2d at 740 (letters from prospective employers not objected to); *In re Marriage of Shelton* (1991), 217 Ill. App. 3d 26, 37-40, 576 N.E.2d at 862, 869-71 (Chapman, J., dissenting) (hearsay testimony that petitioner's new husband was employed in Florida, had been unable to find work in Illinois, had been injured, and that teachers' salaries in Florida are $24,000).) The issue may be one of personal knowledge, rather than hearsay (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §602.1, at 301 (5th ed. 1990)), and it is possible that a wife may

have personal knowledge of her husband's job offers, salaries in another State, and the like. Stephen has not shown otherwise.

Stephen also complains there was no description of the Davis home in Georgia, no testimony that the boys had ever visited the area, and no testimony about physical facilities or curriculum of the schools in Georgia. There was testimony the home was located in the country, about 10 miles from Gainesville, in a hilly area, near mountains and three miles from a recreational lake. Cynthia testified she had visited the schools, but she was not asked whether she had visited the home. The trial court was entitled to conclude, based on the testimony, that there was not much difference between the home and schools in Georgia and those in Decatur. Stephen may understandably have been reluctant to ask Cynthia about those things on cross-examination, but he cannot, on appeal, equate slight testimony on Cynthia's part with testimony in his favor. The major emphasis of Stephen's argument is not that the trial court's decision is contrary to the manifest weight of the evidence, but that there was not sufficient evidence upon which a decision could be based. We reject that argument. Cynthia presented some evidence on each element of her case, and if Stephen disagreed with that evidence he was required to present his own evidence in rebuttal. (See *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154-55, 407 N.E.2d 43, 45.) We would reach the same result even if Cynthia's testimony were hearsay. Hearsay evidence, if admitted without objection, is to be considered and given its natural probative effect. (*People v. Collins* (1985), 106 Ill. 2d 237, 263, 478 N.E.2d 267, 278.) The same is true where hearsay is objected to, but the objection is not preserved on appeal.

The trial court found the Davises could not afford to maintain two homes, and that the boys' quality of life would be improved with Danny employed. Stephen argues Danny's recent employment history is very unstable, and that if "his past employment history is any indication, it will not be long until he returns to Decatur to seek yet another job." Stephen suggests that Cynthia either remain in Georgia without Shaun and Christopher (but with Sara), or return to Decatur with the boys. In response to the trial court's finding that the boys had undergone economic hardship first because of Danny's unemployment, and then because of the expenses of two households, Stephen suggests Cynthia should seek additional employment. The trial court found, however, that Cynthia has been unable to work as a hair stylist because of her arthritis. Cynthia testified that working as a grocery clerk would be a major impediment to the time she could spend with Shaun and Christopher. The trial court might logically prefer an ar-

rangement where Cynthia could be at home with her children to one where she could not. *Davis*, 229 Ill. App. 3d at 662-63, 594 N.E.2d at 740; *Shelton*, 217 Ill. App. 3d at 34, 576 N.E.2d at 868.

It is important to note Stephen concedes that Cynthia is not acting on the basis of any improper motive in seeking removal.

It is significant that most of Stephen's activities with his sons are outdoor activities, which can be well accommodated during the summer. A large block of visitation in the summer may not always be a satisfactory substitute for shorter, more regular periods of visitation. Because Stephen already had summer visitation in this case, it was possible to continue that visitation after the move to Georgia and in fact to expand it. In addition Stephen was given the entire Christmas and spring vacations, whereas he had only half of those periods before. Stephen complains that the number of his visitation days has been reduced by 29%, but the fact the number of days of visitation has been reduced is not dispositive. What is important is "whether, in a given case, a realistic and reasonable visitation schedule can be reached if the move is allowed." *Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1045-46.

■ Even if we were to give more weight to the number of visitation days, we have difficulty understanding Stephen's argument that his days (or overnights) have been reduced from 138 to 98. Total overnights under the original order appear to have been about 108 nights (59 in summer, 39 on weekends, 10 during vacations). Total overnights under the new order would appear to be about 112 nights (92 in summer, 20 during vacations). The extensive visitation provided by the new order also allows continued contact between the boys and their relatives in Decatur. The extensive visitation would give Stephen some opportunity to monitor Christopher's situation, and the trial court could properly have found that Cynthia could adequately deal with any problem. No visitation schedule is perfect. No visitation schedule can approximate the relationship which exists between a father, mother, and children in an intact marriage, but this schedule does about as much as can be hoped for.

In *In re Marriage of Berk* (1991), 215 Ill. App. 3d 459, 463-64, 574 N.E.2d 1364, 1368, the custodial parent told the trial court that she would move to Canada with her new husband in any event, and a denial of her petition for leave to remove would accordingly result in a change of custody, despite the strong preference against modification of custody expressed in section 610 of the Act. (Ill. Rev. Stat. 1991, ch. 40, par. 610.) The appellate court responded:

"Custodial parents and their spouses must remember that they do not make decisions in a vacuum. Decisions must be made in an environment in which the best interests of the children are paramount. This State's courts are in place to protect the children's interests and will not be intimidated or threatened by 'irrevocable' actions of parents. Karen has made her choice to move to Humboldt. She must now live with the consequences of that decision. The presumption of section 610 of the Act is not applicable here. The preservation of the existing family unit is an element to be considered in determining the best interests of the children, but it is only one of many elements. We do not conclude that the court's decision was against the manifest weight of the evidence in light of this argument." (*Berk*, 215 Ill. App. 3d at 465, 574 N.E.2d at 1368.)

Based on *Berk*, Stephen argues that Cynthia "has chosen to become involved with a man who feels free to move about the country looking for his next temporary job, and [Cynthia] herself has chosen to be taken care of by her new husband, rather than advancing her own education and employment opportunities." It is certainly true that courts should not be intimidated by "irrevocable" actions of parents, but as *Berk* recognizes, preservation of the existing custodial arrangement is entitled to some consideration. We disagree with any implication that a noncustodial parent is free to marry whomever he wants to, but a custodial parent is not. (See *Creedon*, 245 Ill. App. 3d at 535-36.) Our decision today is not inconsistent with the second district's decision in *Berk*. First, *Berk* affirmed the decision of the trial court, as we do here. Also, the move there was not based on economic necessity, the move was to another country, the contemplated visitation was much less than here, and the court in *Berk* may have been concerned that the custodian was not that familiar with her intended spouse—or may have factored in the custodial parent's attitude, in light of the weight it attached to other testimony before it.

Stephen argues that in *Davis* this court reversed a trial court order granting leave to remove a child to Georgia, and that decision should be followed here. In *Davis*, however, the father had custody of two minor boys, the wife had custody of the minor daughter, and the siblings would have been separated by the move. A custody order which separates children is usually not in their best interests. (*In re Marriage of Slavenas* (1985), 139 Ill. App. 3d 581, 587, 487 N.E.2d 739, 742.) Here the boys will be separated from their half-sister if they are not allowed to move. If they are allowed to move, they will be separated from Stephen's stepsons, but the trial court could have

found the boys' relationship with their half-sister was closer than that with Stephen's stepsons. Also in *Davis* there was no showing the custodial parent's boyfriend was unable to find suitable employment locally, the visitation afforded by the trial court's order was substantially less, and the record did not support the claim of enhanced income by the move. Although not considered significant for purposes of the *Davis* decision, the custodian there at one point had denied visitation to the noncustodian.

Here there was more than a mere desire for Cynthia to be with her husband in Georgia. The trial court could properly have found there was a legitimate economic reason for the move, that Cynthia did not act on the basis of any improper motive, and that reasonable visitation was provided. The trial court's decision was not contrary to the manifest weight of the evidence.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.