### In re the MARRIAGE OF Eric G. CHESTER, Appellant,

### and

### Judith R. Chester, Appellee.

#### No. 95CA0708.

Colorado Court of Appeals,
Div. IV.

Oct. 12, 1995.

Mary Ray White, Denver, for Appellant.

Jeffrey S. English, Lakewood, for Appellee.

Opinion by Judge TAUBMAN.

In this post-dissolution of marriage proceeding, Eric Chester (father) appeals from an order allowing Judith Rae Chester (mother) to remove the children to the state of Arizona. We affirm in part, reverse in part, and remand with directions.

The parties obtained a decree of dissolution in 1992 and agreed to share joint legal custody of the two children, then ages six and seven. Mother was designated as the primary residential custodian, and the agreement contained the following provision regarding future moves:

> It is the intention of the Parties to both continue to reside within 60 miles of downtown Denver. Any time either party does find it necessary to move more than 60 miles outside of central Denver, the parenting plan will be renegotiated prior to the move taking place, to allow both parents to continue to have frequent access to the children.

In April 1994, mother contemplated moving to Arizona with the children to live with her fiance, who had obtained a job there. In anticipation of this move, the parties were unable to resolve through mediation a dispute concerning the father's parenting time. Therefore, mother filed a motion requesting that the court modify the parenting plan consistent with the needs of the children and the anticipated move to Arizona.

Father responded and expressed the understanding that mother might change her plans and remain in Colorado if the evaluator determined that the children should remain in this state. Nevertheless, father requested that the children be placed with him in the event that mother ultimately chose to leave.

An evidentiary hearing was held in November 1994, and the court approved the

transcript of its bench ruling as the written order. Because neither party had requested a change of custody and the separation agreement contained no restrictions on the removal of the children from the state of Colorado, the trial court considered the motion for removal under the best interests of the child standard.

The trial court also expressly considered the children's wishes not to leave the state and the recommendation of the custody evaluators. However, the court determined that "this move while difficult for the children will not be detrimental to their best interests." Accordingly, the trial court granted mother's motion for removal and ordered a revised "visitation schedule" and child support order effective upon the move, which was anticipated to be in early June 1995.

## I.

Father contends that the trial court did not apply the proper standard for resolving a removal request when the parties share joint custody. We find no reversible error.

In *In re Marriage of Murphy*, 834 P.2d 1287 (Colo.App.1992), a division of this court detailed the factors that, at a minimum, must be considered in determining the child's best interests and resolving a motion for removal filed by a parent with sole custody when the decree or separation agreement contains restrictions against leaving the state with the child.

■ Those factors include: (1) whether there is a sensible reason for the move by the custodial parent; (2) whether there is a reasonable likelihood that the proposed move will enhance the quality of life for the child and the custodial parent; (3) whether the court is able to fashion a reasonable visitation schedule for the non-custodial parent after the move; (4) the motive of the non-custodial parent; (5) whether the non-custodial parent's motion to prevent removal is, in effect, a request for a change of custody and none of the provisions of § 14–10–131, C.R.S. (1987 Repl.Vol. 6B) has been established; and (6) the emotional harm that may be presumed to occur to the child if it is necessary or desirable for the custodial parent to leave the state and the child is not permitted to go.

*In re Marriage of Murphy, supra,* also held that the custodial parent requesting the removal has the initial burden of proving that removal is in the child's best interests, and once a *prima facie* case for removal is established, the burden shifts to the non-custodial parent to prove that the move is detrimental to the child's best interests. *See generally* Stevens, *Removal and Custody in Colorado,* 44 Trial Talk 18 (September 1995); Shapiro, *Removal Issues and Standards for Modification of Custody,* 24 Colo.Law. 1045 (May 1995) (overview of Colorado case law concerning removal of children out of state in dissolution cases).

Furthermore, under § 14–10–123.5(1), C.R.S. (1987 Repl.Vol. 6B), the fact that one party has a longer period of physical custody has no legal effect on the rights or responsibilities of the parties with regard to joint custody.

Father asserts that the *Murphy* criteria should not apply to a motion for removal when the parties share joint custody because that standard favors removal requests that are made by the custodial parent. Father also maintains that when the parties share joint custody, a presumption should arise that the prior joint custody arrangement is to be preserved or, alternatively, that the burden of proof should be placed equally upon both parties. We agree with the latter contention.

Here, because father did not file a motion for modification of custody, we do not address the allocation of the burden of proof in that situation. *Cf. In re Marriage of Francis,* 892 P.2d 359 (Colo.App.1994) (cert. granted March 20, 1995) (discussing standard for modification of residential custody when motion to modify custody and motion to prevent removal of children are filed). And, no Colorado case has addressed the removal issue in the context of joint custodial arrangements. Therefore, cases from other jurisdictions are instructive.

■ In *Jaramillo v. Jaramillo,* 113 N.M. 57, 823 P.2d 299 (1991), the court held that, when the parties share joint custody, neither

should bear the burden to show that relocation of the child with the removing parent will be in, or contrary to, the child's best interests. Instead, each parent has the burden to persuade the court that his or her new parenting plan should be adopted. We conclude that this procedure should be followed in Colorado when motions are filed to modify a parenting plan or to permit or prevent removal of children. Thus, it becomes incumbent upon the trial court to consider as much relevant information as the parties submit and to decide what new arrangement will most appropriately serve the child's best interests.

■ Although we agree that the burden in resolving the issue of removal in joint custody cases must be allocated equally to the parties, we nevertheless conclude that the considerations required by *In re Marriage of Murphy, supra,* continue to govern the resolution of a removal request by the joint custodian who has had primary care of the child. *See In re Marriage of Yndestad,* 232 Ill.App.3d 1, 597 N.E.2d 215 (1992) (remanding removal petition in joint custody case to trial court for application of factors adopted for determining requests for removal in sole custody cases).

■ Thus, while the best interests of the child is the primary or predominant consideration in resolving a motion for removal, the interests of the parents are also relevant, particularly as to the practical effect of an order denying the primary caretaker's request on the child's emotional well-being. *See In re Marriage of Murphy, supra; Jaramillo v. Jaramillo, supra.*

■ Also, to the extent that an order of custody or a parenting plan actually reflects that the nonresidential custodian spends a significant amount of parenting time with his or her children, the existence of a joint custody order may be considered in determining whether removal is in a child's best interests. *In re Marriage of Creedon,* 245 Ill.App.3d 531, 185 Ill.Dec. 724, 615 N.E.2d 19 (1993). *See* § 14–10–123.5(1).

■ And, when removal of the children a substantial distance will substantially impair the nonresidential custodian's involvement with the child, the trial court should examine the potential harm to the child that may result from the move. *See In re Marriage of Eckert,* 119 Ill.2d 316, 116 Ill.Dec. 220, 518 N.E.2d 1041 (1988).

■ Here, in deciding mother's motion for removal, the trial court properly considered the best interests of the children and also properly assessed the factors listed in *In re Marriage of Murphy, supra.* Thus, it considered the contradictory wishes of each joint custodian, the mother's reason for the move, the efforts that were made to avoid a move, the children's expressed wishes, the custody evaluation, the children's performance in school, the anticipated adjustment that would be required if mother's motion were granted, the enhanced quality of life that was expected as a result of removal, and the practical effect of the move on both parties' relationship with the children.

Contrary to father's characterization of the order, the trial court did not place a higher burden upon or create a preference in favor of either party. Accordingly, we cannot say that the trial court's decision on removal here constituted an abuse of discretion. *In re Marriage of Murphy, supra.*

## II.

■ Father also asserts that the trial court did not properly consider the policy of encouraging continuing contact between the children and both parents and that the court essentially restricted his parenting time to vacation time. We are not persuaded.

Here, the trial court found that mother was very willing to cooperate and to support extensive contact with father. The trial court also found that mother had family in Colorado and that her visits with them in Colorado would provide additional opportunities for father to spend time with his children. In order to maximize father's parenting time, the court awarded him parenting time for the entire summer, with the exception of a few days at the end of school and one week before the fall school term, alternating Thanksgivings with a four-day period in October or November of each year, all or

more than one-half of each Christmas vacation in alternating years, and each spring break, totalling at least 95 overnights per year. The trial court allowed father additional parenting time in the event he decided to visit his children in Arizona.

Thus, although the precise number of father's guaranteed number of overnights decreased as a practical necessity because of the geographical move, we conclude that such reduction did not constitute an improper restriction of father's parenting time.

## III.

Father also contends that the trial court improperly disregarded the children's wishes, the recommendation of the court-appointed evaluation team, and the children's unusual reliance and attachment to their school, community, and extended families. We disagree.

The recommendations made by evaluators appointed in custody matters are merely suggestions to the trial court. *Aylor v. Aylor*, 173 Colo. 294, 478 P.2d 302 (1970). It is the responsibility of the trial court as the trier of fact to determine the credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence. *In re Marriage of Hoyt*, 742 P.2d 963 (Colo.App. 1987).

Here, the trial court overruled mother's objection to its consideration of the evaluation conducted in this case. Nevertheless, although it discounted the opinions of the evaluators, the court relied on the evaluators' testimony concerning the children's academic and social skills and activities in concluding that the children were strong, intelligent, healthy, and adaptable. Thus, its determination that the children were capable of adjusting to the out-of-state move without suffering any serious detriment was within its broad discretion.

Similarly, the trial court considered the children's wishes, but was not bound to rule in a manner consistent with those expressions. Rather, the trial court could and did give more weight to the fact that the children, especially the daughter, were closely bonded to the mother, who had been their primary caretaker.

## IV.

Father finally asserts that the trial court miscalculated the amount of child support he is obligated to pay. He argues that the appropriate sum of child support that he should pay is $1,118.26, not $1,135.89.

Because mother agrees that $1,118.26 is the correct amount of support calculated under the guidelines, the order of child support is reversed and the matter is remanded to the trial court for correction of that portion of the order.

## V.

Mother has requested that this court award her the attorney fees and costs that she has incurred in this appeal. Presumably, this request is brought under the provisions of § 14–10–119, C.R.S. (1987 Repl.Vol. 6B).

However, we do not address this issue. Mother's request is a matter that is appropriately raised in the trial court upon proper motion. *See In re Marriage of Meisner*, 715 P.2d 1273 (Colo.App.1985).

The order is affirmed in part, reversed in part, and the cause is remanded with directions to the trial court for correction of the child support order and consideration of mother's request for attorney fees.

NEY and KAPELKE, JJ., concur.