*In re* MARRIAGE OF SANDRA KAY BALLEGEER, n/k/a Sandra Kay Dey, Petitioner-Appellant, and DAVID G. BALLEGEER, Respondent-Appellee.

Third District   No. 3—92—0002

Opinion filed October 21, 1992.

Stephen A. Berger, of Wehr, Berger, Lane & Stevens, of Davenport, Iowa, for appellant.

John R. Lewarne, of Rock Island, for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Sandra Kay Dey appeals from an order of the circuit court of Henry County denying her petition to remove her minor son, Joshua, from Iowa to Colorado. The circuit court denied the petition for removal, finding that the best interests of the child would be better served if he lived in an area closer to his father, David G. Ballegeer, and his extended family. We reverse the circuit court's decision.

The record shows that the parties' marriage was dissolved on July 8, 1986. Joshua was two years old at that time, and the parties agreed that Sandra would have sole custody and control of him. David was granted visitation on every Wednesday night, on alternating weekends and holidays, and for two weeks in the summer.

On February 17, 1987, Sandra filed a petition seeking permission to move with Joshua to Davenport, Iowa. The trial court, noting that the parties agreed that she could move, granted her petition. It also noted that jurisdiction would remain with the courts of Illinois.

On August 30, 1991, Sandra filed a petition seeking to remove Joshua to Colorado. David objected and filed a petition seeking modification of custody. The court then held a consolidated hearing on both petitions.

The evidence from the hearing showed that prior to her petition, Sandra was employed as the warehouse manager for Aspen Distributing in Bettendorf, Iowa. She lived with her new husband, Steven Dey, his 15-year-old son, and their 3-year-old daughter. Early in 1991, Sandra learned that Aspen Distributing was shutting down its Iowa operations. At that time she searched the area for other comparable employment; however, she was unable to find any. Following the plant's closing on July 15, 1991, Sandra was offered a position with the company's corporate headquarters in Denver, Colorado.

After careful consideration of the factors involved, Sandra decided to accept the offer because it involved moving to a larger metropolitan area which would provide greater cultural opportunities. In addition, it provided her with a substantial salary increase and improved her chances for advancement within the company. She conceded that she would be living a great distance from other family members. However, she was willing to allow David liberal visitation rights.

Because of the short time given for accepting the position and the need to enroll Joshua in a school, Sandra moved to Colorado prior to the completion of the proceedings on the motion to remove Joshua from the State. Sandra testified that Joshua had received good grades in his new school and had adjusted well to the move. The new neighborhood had a number of children Joshua's age, and he had made several friends.

David testified that he wanted Joshua to remain in Illinois and live with him. He stated that he lived on a farm and operated a trucking and excavating business. He noted that he had also remarried and his wife, Robin, was very attached to Joshua. He also stated that since his divorce he has never missed a weekend visit with Joshua and has missed only two Wednesday visitations. When Joshua visited, the two of them would do the farm chores together, go to sales, and go boating.

David also testified that his parents, as well as Sandra's parents, live near him. He stated that Joshua is close to both sets of his grandparents and would be able to visit them frequently if Joshua was allowed to live with him. He also noted that Joshua has aunts, uncles, and cousins his own age who also live in the area. Finally, he pointed out that both sides of the families get together for birthday and holiday celebrations which Joshua would miss out on if he lived in Colorado.

Other evidence showed that seven-year-old Joshua was interviewed by the trial judge in chambers. The judge found him to be an intelligent and sharp child who expressed a preference to live with his father so he could play on the farm and help his dad do chores. Finally, the record shows that the guardian *ad litem* recommended that Joshua be allowed to live with David because Joshua would lose contact with extended family members if he was allowed to move to Colorado.

Based on this evidence, the trial judge found that both parties were decent and proper parents. He also found that Sandra's move was appropriate and not designed to frustrate David's visitation rights. In fact, he noted that he would have made the same decision

Sandra had. However, the judge found that it was in Joshua's best interest to remain in Illinois because of his connection to his extended family. As such, he denied Sandra's petition and granted David's petition for change of custody.

On appeal, we initially find that the trial court improperly addressed the two petitions. We note that the petitions involved are governed by different sections of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1991, ch. 40, par. 101 *et seq.*) and involve different standards of proof and evidence.

■ Here, Sandra filed a petition to remove, which is governed by section 609 of the Act. Under that section, the burden is on the petitioner to show that removal of the child is in the child's best interest. The factors used to determine the best interest of the child are set forth in *In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 518 N.E.2d 1041.

In *Eckert*, the court stated that a trial court should consider the proposed move in terms of the likelihood the move will enhance the general quality of life for the child and the custodial parent. In addition, it should consider the custodial parent's motives in seeking removal and the motives of the noncustodial parent in resisting the move. Furthermore, since it is in a child's best interest to have a healthy and close relationship with both parents as well as other family members, the court should consider whether a reasonable visitation schedule could be reached if the move were allowed. *In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 518 N.E.2d 1041.

■ In response, David filed a petition for change of custody. Such a petition is governed by section 610(b) of the Act, which provides in relevant part:

"The court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment *** that a change has occurred in the circumstances of the child or his custodian *** and that the modification is necessary to serve the best interest of the child. *** The court shall state in its decision specific findings of fact in support of its modification or termination of joint custody if either parent opposes the modification or termination." (Ill. Rev. Stat. 1991, ch. 40, par. 610(b).)

David's petition was predicated upon Sandra's move to Colorado.

The court allowed both petitions to be consolidated into one hearing. Problems in such consolidated hearings have arisen in the past. (See, *e.g., In re Marriage of Gratz* (1989), 193 Ill. App. 3d 142, 548

N.E.2d 1325.) A judge is required to hear two different types of evidence and must be careful not to allow evidence proper for one petition to impact upon the decision as to the other petition.

■ In the instant case, the trial court issued one order discussing its findings of fact and its decision denying Sandra's petition to remove and allowing David's petition for change in physical custody. We believe that the trial court was in error. The trial court should have ruled on Sandra's petition first. Had the court denied Sandra's petition, the basis for David's petition would have been eliminated. If the petition had been granted, however, David would then have been required to prove, by clear and convincing evidence, that some change other than the move to Colorado had occurred which required Joshua to be removed from Sandra's physical custody.

As the record shows, the sole basis for the change in physical custody was Sandra's move to Colorado. For the reasons set forth above; we find this to be error and, as such, reverse the trial court's decision awarding David physical custody of Joshua.

We now turn to Sandra's contention that the trial court's decision denying her petition was against the manifest weight of the evidence. We agree.

Applying the factors set forth in *Eckert*, we note that the first factor to consider is the likelihood that the proposed move will enhance the general quality of life for the child and the parent having physical custody. As far as Joshua is concerned, we cannot say that the general quality of his life was directly enhanced by the move to Colorado.

■ However, the move to Colorado significantly enhanced the general quality of life for Sandra, and, therefore, indirectly benefited Joshua's quality of life. The move provided Sandra with a significant salary increase and gave her an opportunity to advance in her career field and within the company she has been employed with for over five years. In addition, the move was to a larger city, thereby providing her with better cultural and recreational opportunities.

As to the second and third *Eckert* factors, there were no allegations that the motives of either Sandra or David in seeking or resisting removal were improper. Accordingly, these factors do not weigh against either party. See *In re Marriage of Zamarripa-Gesundheit* (1988), 175 Ill. App. 3d 184, 529 N.E.2d 780.

The fourth factor concerns the visitation rights of the parent lacking physical custody. The fifth factor requires inquiry into whether a realistic and reasonable visitation schedule can be reached if the move is allowed.

The record showed that there have not been any problems in the past regarding visitation. Joshua has enjoyed a close and loving relationship with David, David's new wife, and David's extended family. It is also apparent that Joshua has enjoyed a good and loving relationship with Sandra, his primary caregiver since birth, and with Sandra's new husband and their extended family.

Sandra is willing to allow liberal visitation, including extended summer and Christmas visitations. In addition, further opportunities for visitation would exist at times when Sandra returns to Henry County to visit with her family. We are of the opinion that, as in *In re Marriage of Gratz* (1989), 193 Ill. App. 3d 142, 548 N.E.2d 1325, the type of visitation proposed, absent any significant problems in the past with visitation, militates in favor of removal.

Applying the facts of the instant case to the factors outlined in *Eckert*, it is apparent that the trial court's decision denying Sandra's petition was against the manifest weight of the evidence. Accordingly, we reverse the trial court's decision denying Sandra's petition to remove. We also note that our decision renders moot Sandra's remaining argument concerning her visitation rights.

Accordingly, the decision of the circuit court of Henry County is reversed and the cause remanded for consideration of visitation and transportation arrangements between David and Sandra.

Reversed and remanded.

BARRY, P.J., and GORMAN, J., concur.