*In re* MARRIAGE OF CINDY K. CLARK, now Cindy K. Davis, Petitioner-Appellant, and KEITH ALLEN CLARK, Respondent-Appellee.

Fourth District   No. 4—92—0908

Opinion filed June 29, 1993.

Michael G. Carroll, of Lemna, Moore & Carroll, of Tuscola, for appellant.

Brian L. Bower and Kristin L. Wilson, both of Brainard, Bower & Kramer, of Charleston, for appellee.

JUSTICE LUND delivered the opinion of the court:

Petitioner appeals an order of the circuit court of Douglas County denying a petition for leave to remove a child from the State of Illinois, pursuant to section 609 of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1991, ch. 40, par. 609). At the close of petitioner's case, respondent moved for judgment under section 2—1110 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, par. 2—1110). This motion was allowed, and the petition to remove the child was dismissed. Petitioner contends the trial court's decision was contrary to the manifest weight of the evidence. We affirm.

The parties were divorced in January 1988, and petitioner was awarded custody of the minor child, Chelsea (born May 7, 1984). She remarried in March 1990 and, until recently, lived in Sullivan, Illinois, with her new husband, Chelsea, and Amanda, a 13-year-old daughter by a prior marriage. Petitioner testified she became symptomatic of chronic respiratory disease in 1987. Currently, she suffers from chronic asthma, bronchitis, and allergies. She sought medical attention and listed a number of daily medications her physician had prescribed for her. The medication has so far failed to relieve her symptoms, which include shortness of breath, chronic coughing, and a burning sensation that radiates throughout her mid-chest. In addition to the medication, she uses an aerator for immediate bronchial dilation. Petitioner testified she smokes cigarettes.

In August 1991, petitioner vacationed in Tennessee and immediately noticed that her breathing problems disappeared. This vacation lasted eight days. The following year, in May 1992, they decided to vacation in Tennessee again and discovered that once again her respiratory problems disappeared. This second visit lasted six days. When she returned to Illinois, the scratchy throat and burning in her chest reappeared. According to her own personal observation, the atmosphere in Tennessee has less pollen, maintains less humidity, and the temperature is more stable. No evidence was presented to substantiate these observations.

A letter from her physician was admitted into evidence for the limited purpose of showing petitioner's state of mind, *i.e.*, she believes that she suffers from chronic respiratory ailments. The letter consists of a single sentence stating she suffers from chronic respiratory disease and that she should move from central Illinois. The letter gives no indication why a different State would be better, nor is there any suggestion as to where petitioner should move.

Petitioner's new husband, Bert Davis, applied for work during the second vacation in Tennessee in May 1992. Afterward, in July 1992, petitioner was present during a conversation between Davis and his supervisor at Quantum Chemical Company (Quantum) in Tuscola, Illinois. The gist of the conversation was admitted solely for the purpose of showing petitioner's state of mind regarding her new husband's employment prospects with Quantum. Petitioner testified this conversation gave her the impression that her husband's unit would be phased out and he was ninth from the bottom if Quantum decided to lay off workers. Davis did not seek employment anywhere else in Illinois but, sometime later in July 1992, he was offered a job in Tennessee. Once he was assured of the new job, he took early retirement from Quantum.

On July 31, 1992, a petition for removal was filed and, on August 4 or 5, 1992, petitioner moved her family to Whitwell, Tennessee—a distance of 463 miles from respondent's residence. Petitioner attempted to get a hearing scheduled as soon as possible, but the earliest date available was August 28, 1992. She testified she meant no disrespect to the court by moving prior to the date of the hearing. She explained her husband needed to start work immediately and, if the petition was allowed, she wanted Chelsea enrolled in her new school right away. She testified she understood that if her petition was denied, she would be required to relocate back to Illinois.

■ In removal cases, the paramount question is whether the move is in the best interest of the child. The burden of proof is on the custodial parent. (Ill. Rev. Stat. 1991, ch. 40, par. 609(a).) Each case must be judged on its own unique set of facts. (*In re Marriage of Davis* (1992), 229 Ill. App. 3d 653, 660, 594 N.E.2d 734, 739.) Our supreme court identified five factors to consider in determining whether removal is in the child's best interest: (1) the likelihood of enhancing the general quality of life for both the custodial parent and the children; (2) the motives of the custodial parent in seeking the move; (3) the motives of the noncustodial parent in resisting the move; (4) the visitation rights of the noncustodial parent; and (5) whether a realistic and reasonable visitation schedule can be reached if the move is allowed. (*In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 326-27, 518 N.E.2d 1041, 1045-46.) In addition, the court should be guided by the policy of the Act, as expressed in section 102(7), to "secure the maximum involvement and cooperation of both parents regarding the physical, mental, moral and emotional well-being of the children during and after the litigation." Ill. Rev. Stat. 1991, ch. 40, par. 102(7).

First, we consider the likelihood that the proposed move will enhance the general quality of life for the custodial parent. We have no doubt that petitioner suffers from respiratory illness. However, the severity of this illness and the likelihood that a move to Tennessee will offer long-term relief from her symptoms are unknown. No medical testimony was presented on the question of her health, and the letter from her physician was admitted for the sole purpose of establishing her own state of mind. Even were we to accept this letter as proof of her medical condition, the letter offers no proof that a move to Tennessee would be beneficial. On this issue, the trial court was asked to rely on the mere opinion of petitioner that her physical condition will improve in Tennessee. No competent evidence was presented that would tend to establish a difference between the atmosphere and vegetation of central Illinois and the State of Tennessee.

There is also no evidence that petitioner's standard of living will improve. Petitioner offered no proof of her husband's salary at his new job, nor did she indicate that it would pay better than any job available in Illinois. It is significant to note that her husband applied for the job in Tennessee prior to being told of a possible layoff in Illinois. We also note the fact that he never sought other employment in Illinois.

Next, we address the most significant issue before the court—the benefit to the child. Petitioner testified that Chelsea appeared to have symptoms of a chronic sinus condition. Her eyes were oftentimes red and puffy, and she would become puffy across her nose and cheekbones as well. She also complains of headaches. All these symptoms seem to disappear in Tennessee. The record gives no indication that she has sought medical attention for these symptoms, and no medical testimony was offered to prove the severity of her illness or the likelihood that a move to Tennessee would provide long-term benefits.

Evidence of the benefits accruing to the child is severely lacking. No evidence was offered regarding the schools she would attend, the house she would occupy, or the neighborhood in which she would live. Chelsea did not testify on her own behalf, so we have no indication of her personal feelings regarding the move. When asked how she expects Chelsea to feel about moving away from her father and her extended family, petitioner replied that Chelsea will miss them and feel a void.

Overall, evidence of any benefit to Chelsea is overwhelmingly insufficient to support a petition for removal out of State. The benefits of the move accruing to the custodial parent are unsubstantiated. The benefits to the child, which appear to be nothing more than relief

from a mild allergy, are not only unsubstantiated, but insignificant as well.

In contrast, we have ample evidence of significant harm to the child. Respondent enjoys a close relationship with his daughter, to the extent that he has exercised visitation with her beyond the terms provided in the judgment for dissolution of marriage. Moreover, Chelsea enjoys a close relationship with her extended family in Illinois, does well in school, and gets along well with the children in Sullivan, Illinois.

In regard to the other factors cited in *Eckert*, we find nothing in the record to cause us to suspect the motives of either parent. Evidence on the issue of developing a reasonable visitation schedule is lacking, but it seems clear that respondent's visitation with his daughter, which now takes place on alternate weekends, would be severely curtailed. Even if a plan was submitted that preserved the actual number of visitation days, we cannot ignore the fact that the interval between these visits would be drastically changed. Our supreme court has stated that when a parent has assiduously exercised his or her visitation rights, a court should be loath to interfere by permitting removal of the child for frivolous, unpersuasive, or inadequate reasons. (*Eckert*, 119 Ill. 2d at 327, 518 N.E.2d at 1046.) We find the reasons offered in support of removal are both inadequate and unpersuasive.

In nonjury cases, section 2—1110 of the Code allows defendant, at the close of plaintiff's case in chief, to move for a finding or judgment in his favor. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1110.) The court must consider all the evidence, including that favorable to defendant, and it is to pass on the credibility of witnesses, draw reasonable inferences from the testimony, and generally consider the weight and quality of the evidence. The court is not to view the evidence in the light most favorable to plaintiff. On appeal, the decision of the trial court should not be reversed unless it is contrary to the manifest weight of the evidence. (*Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154, 407 N.E.2d 43, 44-45.) We find no error in the trial court's dismissal of the petition to remove a child from Illinois.

Affirmed.

McCULLOUGH and GREEN, JJ., concur.