3 September 1999

NO. 4-98-0860

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In Re: the Marriage of ) Appeal from

SUSANNA M. LANGE, n/k/a ) Circuit Court of

SUSANNA M. WASSILL, ) Edgar County

          Petitioner-Appellant, ) No. 93D96

          v. ) 

GAYLE A. LANGE, ) Honorable

          Respondent-Appellee. ) Richard E. Scott,

 ) Judge Presiding.

_______________________________________________________________

JUSTICE McCULLOUGH delivered the opinion of the court:

Petitioner Susanna M. Lange, n/k/a Susanna M. Wassill (Susanna), appeals an order of the circuit court of Edgar County denying her petition to move the parties' minor children, Anna Louise Lange, born October 16, 1990, and James Albert-Galen Lange, born October 15, 1992, from Indiana to Texas.  Susanna had custody of the children pursuant to a judgment of dissolution of her marriage to respondent Gayle A. Lange (Gayle), entered January 21, 1994.  The only issue raised on appeal by Susanna is whether the trial court's findings were against the manifest weight of the evidence or, in the alternative, the trial court improperly considered the "necessity" of Susanna's move to Texas.   We affirm.

The parties and this court are familiar with the facts, and only those facts necessary to an understanding of this court's disposi­tion will be discussed.

Although no court from another state has asserted jurisdiction and the parties have never challenged the trial court's jurisdiction or that court's authority to enter an order 

regarding removal of the children from Indiana to Texas, the dissent addresses the issue, necessitating that this question be addressed.  See 
In re Estate of Steinfeld
, 158 Ill. 2d 1, 12, 630 N.E.2d 801, 806 (1994) (an order or judgment is void if the trial court lacked (1) jurisdiction of the subject matter or over the parties or (2) the inherent power to make or enter the order); 
In re Marriage of Fields
, 288 Ill. App. 3d 1053, 1056-57, 681 N.E.2d 166, 169 (1997).  The judgment of dissolu­tion awarded custody to Susanna, subject to visitation agreed to in the marital settlement agree­ment.  The judgment recited that Susanna resided in Terre Haute, Indiana, and Gayle resided in Metcalf, Illinois.  The judgment further stated, "This court retains jurisdiction of this cause for the purpose of enforcing the terms of this Judgment of Dissolution of Marriage."  The marital settlement agreement did not specify the visitation rights of Gayle except to say that he was entitled to "reasonable visitation *** with the restriction that no overnight visitations will be allowed without first acquiring approval of" Susanna.  The testimony of the parties established that, by agreement, Gayle's visitation immediately following the dissolution of marriage was exercised weekly at Susanna's house.  Sometime in 1996, after Susanna felt the children could handle overnight visitation, Gayle exercised visitation on Saturday and Sunday every other week, although he had requested the children from 5 p.m. Friday to 6 p.m. Sunday.  The only periods of "extend­

ed" visitation exercised by Gayle were two 4-day periods in the summer of 1997; 10 days during the Christmas season in 1997 when Susanna visited her friend in Houston, Texas; and 11 days in July 1998 when Gayle and his fiancée, Barbara Windmiller, took the children to Orlando, Florida.

On July 11, 1998, Susanna filed a pleading entitled "MOTION FOR LEAVE TO REMOVE MINOR CHILDREN."  The prayer for relief asked that (1) she be allowed to move the children to Texas, (2) visitation be modified "as the Court deems appropriate," and (3) the court grant other relief it deems appropriate.  The petition alleged that "visitation can be adjusted to allow for extensive visitation for summertime and over extended holiday periods."

Even though the children were residing with Susanna in Terre Haute, Indiana, at the time the petition was filed, the trial court had jurisdiction.  The trial court had jurisdiction of the parties.  Both appeared and participated in the proceedings instituted in the trial court by Susanna.  With regard to subject-matter jurisdiction, a circuit court has continuing jurisdiction in child custody matters such that the revestment doctrine need not be utilized.  
In re Marriage of Oertel
, 216 Ill. App. 3d 806, 813-14, 576 N.E.2d 435, 441 (1991).  The rationale in 
Oertel
 relied on section 601(a) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (Ill. Rev. Stat. 1989, ch. 40, par. 601(a) (now 750 ILCS 5/601(a) (West 1996))).  Section 601(a) of the Marriage Act in turn refers to section 4 of the Illinois Uniform Child Custody Jurisdic­tion Act (Illinois Act) (750 ILCS 35/4 (West 1996)).  Section 4(b) of the Illinois Act provides:

"A court, once having obtained jurisdic­

tion over a child, shall retain such jurisdic­

tion unless it concedes jurisdiction to a foreign state or none of the parties to the action, including the child, remain in Illi­

nois."  750 ILCS 35/4(b) (West 1996).

Section 4(b) is not part of the Uniform Child Custody Jurisdiction Act (Uniform Act) (Uniform Child Custody Jurisdiction Act, 9 U.L.A. 115 (1988)) and is unique to Illinois.  See 
In re Marriage of Bueche
, 193 Ill. App. 3d 594, 599-600, 550 N.E.2d 48, 51-52 (1990) (a Michigan court's declared retention of jurisdiction was not deemed effective to prevent an Illinois court from obtaining jurisdiction of a child living in Illinois).

In the case at bar, the judgment of dissolution expressly stated the circuit court of Edgar County retained jurisdiction for enforce­ment of the judgment.  That judgment did not concede jurisdiction to any other state, and Gayle remained a resident of Illinois.  On that basis alone, the trial court had subject-matter jurisdiction.  See 
In re Marriage of Stafeil
, 169 Ill. App. 3d 630, 634-35, 523 N.E.2d 1003, 1005-06 (1988) (courts once having obtained jurisdic­tion do not lose it unless it is conceded to a foreign state, and it was undisputed that the Illinois court never conceded jurisdic­tion).  This court in 
In re Marriage of Arulpragasam
, 304 Ill. App. 3d 139, 146, 709 N.E.2d 725, 730 (1999), in referring to the Illinois Act, stated: 

"Under the Uniform Act, it is possible for several states to have jurisdiction. '[T]he first such [s]tate to exercise jurisdiction has the exclusive right to proceed.'  
In re Marriage of Schoeffel
, 268 Ill. App. 3d 839, 843, 644 N.E.2d 827, 830 (1994).  The first step in a case arising under the Illinois Act is for the circuit court to determine whether jurisdiction is possible under one of four bases (750 ILCS 35/4(a) (West 1996)); only after this has been done will the circuit court decide whether the court of another state is a more appropriate forum."  

Here, the parties never questioned jurisdiction of the Illinois court, and no simultaneous proceedings existed in courts of other states (see 750 ILCS 35/7(a) (West 1996)).

In addition, section 4(a)(2) of the Illinois Act gives the trial court jurisdiction if it is in a child's best interests that the Illinois courts assume jurisdiction because (1) the child and at least one contestant have a significant connection with Illinois and (2) substantial evidence is available in Illinois concerning the child's present or future care, protection, training, and personal relationships.  750 ILCS 35/4(a)(2) (West 1996).  The signifi­cance of the connections and the substantialness of the evidence are questions to be decided in the event one of the parties challenges the jurisdiction of the trial court.  Here, whether signifi­cant connections and substantial evidence exist that are sufficient to confer jurisdiction is never raised in the circuit court, and the custodial parent has conceded the question of the trial court's jurisdiction by filing the petition in a circuit court in Illinois.

Furthermore, the evidence that was presented in this case would support a finding of jurisdiction under section 4(a)(2) of the Illinois Act:  (1) the children's father is a lifetime resident of Illinois; (2) the children visit him in Illinois on a regular basis; (3) numerous extended family members with whom the children have close relation­ships live in Illinois; (4) the parties lived in Illinois during their marriage; (5) the children lived in Illinois until the dissolution of their parents' marriage; and (6) an Illinois court dissolved the marriage and made the original custody and visitation determi­na­tions.  Five of the seven witnesses who testified in this matter were Illinois residents.  Although the mother and children lived in Indiana, their home and those of the mother's principal witnesses were less than an hour's drive from the father's Illinois home.  

In re Marriage of Kitchen
, 126 Ill. App. 3d 192, 467 N.E.2d 344 (1984), is helpful.  In 
Kitchen
, nobody lived in Illinois.  The dissolution was obtained in the circuit court of Bureau County, Illinois.  Subsequently, the noncusto­dial father moved to Texas.  The custodial mother took the daughter to Nebraska and then filed a petition seeking authoriza­tion for removal from Illinois in the circuit court of Bureau County.  The father tried to get a Texas court to take jurisdiction, but the Texas court deferred to the Illinois court.  The 
Kitchen
 court held that the circuit court of Bureau County had jurisdiction.  
Kitchen
, 126 Ill. App. 3d at 196-97, 467 N.E.2d at 348.  In 
Kitchen
, nobody tried to invoke the jurisdiction of a Nebraska court, and here nobody tried to invoke the jurisdic­tion of an Indiana or Texas court.  See also 
In re Marriage of Ballegeer
, 236 Ill. App. 3d 941, 942, 602 N.E.2d 852, 853 (1992) (at the time of the agreed order allowing removal of the children from Illinois to Iowa, the parties agreed that jurisdic­tion would remain with the courts in Illinois). 

Finally, if all else fails, the parties have revested the trial court with jurisdiction.  In 
In re Marriage of Demond
, 142 Ill. App. 3d 134, 137, 491 N.E.2d 501, 504 (1986), the court discussed the revestment of jurisdiction doctrine as follows:

"[L]itigants may revest a court which has general jurisdiction over the matter with both person­al and subject[-]matter jurisdiction over the particular cause after the 30-day period following final judg­ment during which post-judgment motions must ordinarily be filed.  (
People v. Kaeding
 (1983), 98 Ill. 2d 237, 240, 456 N.E.2d 11, 14.)  'In order for the rule to apply, the parties must actively participate without objection in proceedings which are inconsis­tent with the merits of the prior judgment.'  98 Ill. 2d 237, 241, 456 N.E.2d 11, 14."

A related question is the trial court's authority to deny a request to move the children from Indiana to Texas.  The premise for the argument that the trial court did not have the authority to enter its order was based on the belief that the only statute authorizing the trial court to address removal of children was section 609 of the Marriage Act (750 ILCS 5/609 (West 1996)).  Here, Susanna's motion in the trial court did not recite that it was made pursuant to section 609 of the Marriage Act.  Although her argument in this court suggests Susanna has accepted the trial court's finding that this matter is controlled by section 609(a), this court need not accept the trial court's reasoning since it is the trial court's judgment, not its reasoning, that is being reviewed.  
Material Service Corp. v. Department of Revenue
, 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12 (1983).

Section 609(a) of the Marriage Act requires the custodial parent to petition to remove the child "from Illinois."  750 ILCS 5/609(a) (West 1996).  In this case, the child was already permitted to be removed from Illinois, and the trial court's approval was implicit in the original decision of dissolution.  In this case, Susanna's motion purported to be a petition for removal, but it was also in the nature of a petition to modify visitation to facilitate Susanna's move to Texas with the children.  The trial court had jurisdic­tion to consider the removal and visitation issues.  The order denying Susanna's request to move the children from Indiana to Texas was within the authority of the trial court to enforce the custody and visitation provisions of the judgment of dissolution.  The minor children of the parties to a dissolution of marriage proceeding are deemed wards of the court during their minority.  See 
Sommer v. Borovic
, 69 Ill. 2d 220, 229, 370 N.E.2d 1028, 1030-31 (1977), quoting 
Kelley v. Kelley
, 317 Ill. 104, 110, 147 N.E. 659, 661 (1925).  It is clear from the legislature's placement of section 609 within "Part VI-Custody" of the Marriage Act that the legisla­ture recognized that moving children impacts the visitation rights of the noncusto­dial parent and the best interests of the children.  Moreover, one of the stated purposes of the Illinois Act is to deter the unilateral removal of children.  750 ILCS 35/2(a)(5) (West 1996); 
In re Marriage of Breyley
, 247 Ill. App. 3d 486, 494, 617 N.E.2d 423, 429 (1993).  In this case, the trial court's authority to deny Susanna's request to move the children to Texas was an inherent part of the trial court's authority to enforce the custody and visitation provisions of the judgment of dissolution.

Custody and visitation are determined on the basis of the best interests of the children.  
In re Marriage of Dobey
, 258 Ill. App. 3d 874, 876-77, 629 N.E.2d 812, 814-15 (1994).

"When a court designates one parent as the custodial parent, that designation does not and should not deprive the noncustodial parent of all rights and privileges as a parent.  As section 602(c) of the Act pro­

vides, '[t]he court shall presume that the maximum involvement and cooperation of both parents regarding the physical, mental, moral, and emotional well-being of their child is in the best interest of the child.'  (Ill. Rev. Stat. 1991, ch. 40, par. 602(c).)  Further, the custodial parent has the duty to strength­

en and nurture in every way possible the relationship between the children and their noncustodial parent."  
Dobey
, 258 Ill. App. 3d at 877, 629 N.E.2d at 815.

In re Marriage of Nolte
, 241 Ill. App. 3d 320, 330, 609 N.E.2d 381, 388 (1993), also provides guidance:

"Continuity in lifestyle and environment is important to the healthy and normal devel­

opment of children.  (
Mason v. Mason
 (1977), 49 Ill. App. 3d 775, 364 N.E.2d 705.)  Changes in the custodial parent's residence and em­

ployment may be relevant factors in determin­

ing the children's best interest." 

The Supreme Court of Illinois has recognized that (1) the removal of a child to a distant location will substantially impair the noncustodial parent's involvement with that child, and (2) one of the purposes of the Marriage Act is to secure the maximum involve­ment and cooperation from both parents regarding a child's physical, mental, moral, and emotional well-being, during and after the litigation.  
In re Marriage of Eckert
, 119 Ill. 2d 316, 328, 518 N.E.2d 1041, 1046 (1988), quoting Ill. Rev. Stat. 1987, ch. 40, par. 102(7) (now 750 ILCS 5/102(7) (West 1996)).  The removal of the children from the current custodial residence, when related to the issue of modifica­tion of visitation, is also to be determined on the basis of the best interests of the children.  See 750 ILCS 5/609(a) (West 1996); 
In re Marriage of Krivi
, 283 Ill. App. 3d 772, 774, 670 N.E.2d 1162, 1164 (1996).

"Regarding the motives of the custodial parent in seeking the move, we note that the mere desire to move to another state, without more, is insufficient to show that the move is in the child's best interest.  
Deckard
, 246 Ill. App. 3d at 430, 615 N.E.2d at 1330; 
Davis
, 229 Ill. App. 3d at 661, 594 N.E.2d at 739.  Courts must remain vigilant to ensure that custodial parents do not 'employ removal as a weapon, especially in light of the severe statutory limitations placed upon restriction or termination of visitation.'  
In re Marriage of Creedon
, 245 Ill. App. 3d 531, 535, 615 N.E.2d 19, 22 (1993)."  
Krivi
, 283 Ill. App. 3d at 776, 670 N.E.2d at 1165-66.

In the case at bar, to determine that the trial court did not have the authority to rule upon the request to move the children from Indiana to Texas would deprive the trial court of the authority to enforce the visitation provisions of the judgment of dissolution in spite of the clear legislative intention to the contrary expressed in the Illinois Act and the Marriage Act.  Here, the circuit court in Illinois entered the judgment of dissolu­tion and retained jurisdiction to enforce that judgment.  It has the authori­ty, incident to its power to enforce and modify the custody and visitation provisions of the judgment of dissolution, to grant or deny a motion by a custodial parent residing with the children outside of Illinois to remove the children from the current custodial residence to a more remote residence in some third state.

The remaining issue is whether the trial court's order denying removal from Indiana to Texas was erroneous.  Although section 609(a) of the Marriage Act is not directly implicated, the standards applicable to a petition to remove children from Illinois are equally applicable here.  

Section 609(a) of the Marriage Act provides: 

"The court may grant leave, before or after judg­ment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such ap­proval is in the best interests of such child or children.  The burden of proving that such removal is in the best interests of such child or children is on the party seeking the remov­al."  750 ILCS 5/609(a) (West 1996).

In removal actions, a trial court's determination of what is in the best interests of the child should not be reversed unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred.  
Eckert
, 119 Ill. 2d at 328, 518 N.E.2d at 1046.

The factors courts should consider in determining the best interests of the children in removal cases include the following:  (1) the likeli­hood that the proposed move will enhance the general quality of life for both the custodial parent and the children; (2) the motives of the custodial parent in seeking the move to ascertain whether seeking to move is a ruse to defeat or frustrate visita­tion; and (3) the motives of the noncustodial parent in contest­ing the move.  
Eckert
, 119 Ill. 2d at 326-27, 518 N.E.2d at 1045; see also 
In re Marriage of Smith
, 172 Ill. 2d 312, 321, 665 N.E.2d 1209, 1213 (1996).  Because it is in the best interests of the children to have a healthy and close relation­ship with both parents, as well as other family members, the visitation rights of the noncustodial parent should be carefully considered, and it should be determined whether a realistic and reasonable visitation schedule can be reached if the move is allowed.  A reasonable visitation schedule is one that will preserve and foster the children's relationship with the noncustodial parent.  
Eckert
, 119 Ill. 2d at 327, 518 N.E.2d at 1045-1046.

In the proceedings below, the trial court found no basis for questioning Susanna's motive in seeking the move or in Gayle's motive in resisting the move.  We find no reason to disturb the trial court's determinations with regard to these factors.  Susanna sincerely wants to move to Houston, and this desire is not founded on improper motives.  However, "the mere desire of the custodial parent to move to another [s]tate, without more, is insufficient to show that the move would be in the children's best interest."  
Eckert
, 119 Ill. 2d at 325, 518 N.E.2d at 1044.  Susanna had the burden to show that the move was in the best interests of the children.  She testified the children were safe, happy, loved, and receiving a good education in Terre Haute.  At the time of the hearing, Anna was seven and James was five.  The children have close relationships with members of their mother's and father's extended families living in the Terre Haute area, while they would have no extended family in the Houston area.

Susanna testified part of the reason she wanted to move to Houston was to improve her financial position.  However, the evidence simply did not reveal any significant financial advantage flowing from the move to Houston.  Susanna testified she had been a tenured mathematics teacher with a master's degree working in the Vigo County, Indiana, public school system on an 80% contract.  Not working full-time allowed her to spend extra time with the children.  She earned $25,683 per year on the 80% contract and originally intended to seek full-time employment in the Vigo County school system for the 1998-99 school year because James would be in school at that time.  As a full-time teacher, she would earn approximately $32,500 per year, and she expected a 3.4% raise on top of that.  After starting up a friendship with a teacher from Houston, Texas, Susanna visited that area, found it culturally and recreationally appealable, accepted a job offer from the Houston public school system, resigned her position in Indiana, purchased a home in a Houston suburb, and moved there.  The children remained in Indiana with Susanna's mother and brother pending the outcome of this proceeding.  With the Houston public schools, Susanna received a one-year probationary contract at $31,968 per year.  She expected a 5% raise after the first year.  The cost of health insurance was less, benefits were better, and she eventually could earn an extra $500 as a teacher-mentor.  She believed she could eventually earn more in Houston with a doctorate in mathematics.  However, she had not looked into employment opportunities in the areas of Indiana and Illinois near her home.  Her house payment and real estate taxes in Houston were between $650 and $700 per month.  Before selling her home in Indiana, her house payment was $300 per month, but she would need a larger home if she remained in Indiana.  Thus, the record provides support for finding that the move to Houston would not enhance the general quality of life of Susanna and the children.

With regard to this factor, similari­ty exists between the facts of this case and the facts in 
Eckert
.  There
, the supreme court affirmed the trial court's denial of a petition to remove filed by the mother.  The mother testified she was moving to improve her financial condition, but the new position she intended to take would pay little, if any, more than the position she held in Illinois.  Moreover, she had not sought alternative employment near her Illinois home.  
Eckert
, 119 Ill. 2d at 328-29, 518 N.E.2d at 1046.

Concerning visitation, 
the supreme court stated in 
Eckert
 that when a parent has assiduously exercised his or her visitation rights, a court should be loathe to interfere with visitation by permitting removal of the children for frivolous or unpersuasive or inadequate reasons.  Moreover, a trial court's examination of a removal petition should be guided by the policy of securing maximum involvement and cooperation of both parents regarding the physical, mental, moral, and emotional well-being of the children.  
Eckert
, 119 Ill. 2d at 327-28, 518 N.E.2d at 1046.  In the instant case, Gayle has "assiduously" exercised his visitation rights, and denial of the petition would promote maximum involvement of both parents in the lives of their children.  The evidence also established that the children's relationship with extended family members from both sides of the family would be disrupted by the move to Texas.

Susanna argued that the relationship between the children and Gayle would improve with a few extended visits, as opposed to a larger number of brief visits, and the total number of days of visitation would actually increase slightly under her proposed visitation schedule.  When faced with a similar argument in 
In re Marriage of Clark
, 246 Ill. App. 3d 479, 483, 616 N.E.2d 2, 5 (1993), this court stated:

"[I]t seems clear that respondent's visitation with his daughter, which now takes place on alternate weekends, would be severely cur­tailed.  Even if a plan was submitted that preserved the actual number of visitation days, we cannot ignore the fact that the interval between these visits would be drasti­

cally changed."

Having heard all of the evidence on this matter, the trial court could reasonably find that the visitation schedule proposed by Susanna would not preserve and foster the relationship between Gayle and his children.

Finally, Susanna argues the trial court improperly created a "necessity" requirement for removal petitions.  This assertion is based on the trial court's observation that this is not a case of a remarriage with the new spouse being transferred through job necessity to the Houston area.  The trial court's order gives no indication that it considered remarriage and transfer of a new spouse as a prerequisite for granting removal petitions.  This comment is merely one of several observations made by the trial court concerning the facts of this case, including the necessity and economic impact of the move to Houston.

A determination of the best interests of the children must be made on a case-by-case basis, depending, to a great extent, upon the circumstances of each case.  
Eckert
, 119 Ill. 2d at 326, 518 N.E.2d at 1045.  In this case, the trial court held a hearing over the course of two days, receiving testimony from seven different witnesses.  The trial court's decision is not against the manifest weight of the evidence or manifestly unjust.

The judgment of the circuit court of Edgar County is affirmed.

Affirmed.

KNECHT, P.J., concurs.

MYERSCOUGH, J., dissents.

JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent. When these parties divorced in 1994, petitioner was given permission to remove the children from Illinois to Indiana.  Petitioner now seeks permission to remove the children from Indiana to Texas.  It is my opinion that the trial court lacked both the subject-matter jurisdiction to hear this matter and the statutory authority to enter an order approv­ing or denying the request.  In the alternative, if the majority is correct in its contention that the trial court could consider this matter under the guise of a motion to modify visitation, the case should be remanded for consideration under the standards applicable to modification of visitation rather than the stan­dards applicable to removal.

The majority first asserts that the trial court had jurisdiction over this matter pursuant to the Illinois Act.  However, the Illinois Act, by title and definition, is applicable only to matters involving child custody disputes.  750 ILCS 35/1,  2 (West 1996).  The Illinois Act's only application to removal matters is to "deter abductions and other unilateral removals of children undertaken to obtain custody awards."  750 ILCS 35/2(a)(5) (West 1996); see also 
Breyley
, 247 Ill. App. 3d at  494, 617 N.E.2d at 429.  The instant case does not involve a dispute concerning the custody of the parties' children.  Therefore, the trial court cannot find authority for its actions under the Illinois Act.

The majority apparently looks to the Illinois Act for the trial court's authority because it recognizes that the authority cannot be found in the Illinois statute concerning the actual issue in this case--the interstate removal of children.  Section 609(a) of the Marriage Act bestows upon a court the authority to determine whether a party having custody of a minor child may remove the child "from Illinois."  750 ILCS 5/609(a) (West 1996).  This is the sole grant of author­ity to Illinois courts with regard to removal issues.  To illus­trate the limitations of this language, assume a custodial mother has received leave of court to remove her children from Illinois to North Carolina.  Several years later, she decides to move to South Carolina.  Nothing in section 609(a), or elsewhere in the Marriage Act, would require the mother to seek an Illinois court's permission before making such a move.  More important,  nothing in the Marriage Act would give an Illinois court the authority to determine whether the mother may move her children from North Carolina to South Caroli­na.  A move from Indiana to Texas involves different geographic locations, but the same legal principles.  

The majority relies on 
Kitchen
, 126 Ill. App. 3d 192, 467 N.E.2d 344.  However, unlike the instant case, 
Kitchen
 was a custody dispute that involved the Illinois Act.  Moreover, in 
Kitchen
, a pending petition was filed by the custodial parent in an Illinois court seeking leave to remove the children from Illinois to Nebraska, when the noncusto­dial parent took the children from Nebraska to Texas without permission from the court.  
Kitchen
 is therefore inapposite.

The majority also cites 
Ballegeer
, 236 Ill. App. 3d 941, 602 N.E.2d 344.  While factually similar to the instant case, 
Ballegeer
 does not directly address the issue under consideration here.  
Ballegeer
 involved a peti­tion to remove children from Iowa to Colorado.  However, 
Ballegeer
 does not discuss the court's authority to allow or deny the move.  As in the instant case, it appears the parties and the court simply assumed such authority existed.  
Ballegeer
 is an example of a court doing what the trial court did in the instant case.  Unfortunately, however, it does not provide us with any guidance on whether the court actually had the authority to decide the issue.

Similarly, this court's recent decision in 
Arulpragasam
 is not dispositive of the issue in the instant case with regard to Illinois law, as it con­cerned both custody and removal questions, was brought under the Illinois Act, and involved removal from Massachu­setts to Illinois.  
Arulpragasam
 304 Ill. App. 3d at 143-

44, 709 N.E.2d at 728-29.  There­fore, it offers no guidance on situa­tions in which Illinois is neither the current residence of the chil­dren nor the state to which permis­sion for removal is sought.  Howev­er, the procedural history of the parties in the Massachu­setts court, as outlined in our decision in 
Arul­pragasam
, is instruc­tive.  The Massachusetts court found that it could exer­

cise jurisdiction over the matter pursuant to the Illinois Act.  Howev­er, because the facts of the case did not satisfy the require­

ments of the Massachusetts removal statute, the court decided it was without authority to either grant or deny the mother's request for permission to remove the chil­dren permanent­ly to Illinois.  
Arulpragasam
 304 Ill. App. 3d at 143, 709 N.E.2d at 728.  Simi­

larly, Illinois courts lack statutory author­ity to rule on this particu­lar removal issue.

I focus on statutory authority because the specific grant of statutory authority must be identified in dissolution actions.  Dissolution of marriage and collateral matters are entirely statutory in origin and nature.  
In re Marriage of Henry
, 156 Ill. 2d 541, 544, 622 N.E.2d 803, 805 (1993).  No common law governs dissolution.  
In re Support of Josic
, 78 Ill. App. 3d 347, 350, 397 N.E. 2d 204, 207 (1979).  The circuit court's jurisdiction in dissolution matters is conferred only by statute.  The court may not rely on general equity powers.  
Ottwell v. Ottwell
, 167 Ill. App. 3d 901, 908, 522 N.E.2d 328, 332 (1988).

Statutory considerations extend not only to the author­ity of the court to enter the order entered below, but also to the court's subject-matter jurisdiction.  Where the legislature has intended a particular requirement to serve as a limitation on the authority of the court, failure to comply with the statute is an action outside the subject-matter jurisdiction of the court. 
In re Marriage of Vernon
, 253 Ill. App. 3d 783, 788, 625 N.E.2d 823, 827 (1993); 
In re Marriage of Florence
, 260 Ill. App. 3d 116, 121, 632 N.E.2d 681, 685 (1994).  The issue of subject-matter jurisdiction cannot be waived by the parties.  
Currie v. Lao
, 148 Ill. 2d 151, 157, 592, N.E.2d 977, 979 (1992).

The majority also attempts to support the trial court's authority by viewing the proceedings below as an action to modify the visitation granted in the original dissolution order.  This characterization of the proceedings is difficult to reconcile with the record.  The petition was brought as a petition to remove pursuant to section 609(a) of the Marriage Act.  The evidence and arguments of counsel were tailored to the requirements of section 609(a).  The order of the trial court cited section 609(a) and specifically addressed the elements to be considered in removal cases under section 609(a) as identified by the supreme court in 
Eckert
, 119 Ill. 2d at 326-27, 518 N.E.2d at 1045-46.  In fact, the majority relies upon the 
Eckert
 elements in its review of the merits of the trial court's decision.  The 
Eckert
 "plus" standards applied by this court create a near-insurmountable obstacle to overcome and unnecessarily impair and infringe upon the custodial parent's discretion to choose where he or she wants to work and live and raise the children.

Moreover, the question of visitation was merely tangen­

tial to the removal question litigated below.  However, if the trial court's authority to decide this case was based on its authority to modify visitation, this matter should be remanded.  Upon remand, the parties can litigate the visitation issue pursu­ant to visitation statutes and standards rather than having a visita­

tion issue decided on the removal statute and stringent removal standards.