NOTICE

Decision filed 2/10/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-05-0488

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

_____

| | | |
|---|---|---|
| *In re* PARENTAGE OF ANDREW KALANI TAVARES, a Minor | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| (Shane Tavares, | ) ) | |
|    Petitioner-Appellee and Cross-Appellant, | ) ) | |
| v. | ) ) | No. 01-F-590 |
| Veronica Rangel, | ) ) | Honorable William C. Norton, |
|    Respondent-Appellant and Cross-Appellee). | ) | Judge, presiding. |

_____

_____

JUSTICE WELCH delivered the opinion of the court:

The respondent, Veronica Rangel, appeals a judgment by the circuit court of St. Clair County that denied her petition to modify visitation and denied her petition for leave to remove her son Andrew Tavares from the State of Illinois. The petitioner, Shane Tavares, cross-appeals the circuit court's order that denied his petition to modify custody. Because we believe that the circuit court had no authority to deny Veronica's petition for leave to remove and because we believe that the circuit court's denial of Veronica's petition to modify visitation and Shane's petition to modify custody was based on its denial of Veronica's petition for leave to remove, we vacate in part, reverse in part, and remand for further proceedings.

Background

The parties in this case met while they were members of the military and

1

stationed at Scott Air Force Base in Belleville, Illinois. Although the parties did not marry, their relationship produced one child, Andrew, who was born October 30, 1999.

On May 30, 2001, Veronica filed a petition under the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/1 *et seq.* (West 2000)) to determine the existence of the father-child relationship. Shane admitted parentage and the parties entered into a joint-parenting agreement, in which the parties agreed to share the joint custody of Andrew. The agreement further provided that Andrew's "primary residence and legal residence (for purposes of schooling and other such matters where it is necessary for the child to have a legal residence) would be the residence of" Veronica. The agreement also provided Shane with visitation on every other weekend, on every other holiday, and for four weeks during the summer. The circuit court entered an agreed-upon order incorporating the joint-parenting agreement.

Toward the end of 2002, Veronica received orders from the Air Force transferring her from Scott Air Force Base in Illinois to Eielson Air Force Base in Alaska effective February 1, 2003. In light of the transfer, the parties agreed to modify the joint-parenting agreement to the extent that the visitation schedule be changed to provide Shane with four consecutive months of visitation each calendar year. All the remaining provisions of the joint-parenting agreement remained in full force and effect. An agreed-upon order was entered by the circuit court on January 2, 2003.

On February 1, 2003, Andrew and Veronica began their new life in Alaska. For the following three months, Andrew resided with Veronica in Alaska. In May 2003, Andrew returned to Illinois to visit Shane for the summer. Andrew then returned to Alaska sometime in mid-August 2003 and stayed there until May 2004,

with the exception of spending 3½ weeks in Illinois around the Christmas holidays. In May 2004, Andrew returned to Illinois, where he visited Shane for the summer.

On June 23, 2004, Shane filed a petition to modify custody. His petition alleged that a substantial change of circumstances had occurred in that Andrew was "scheduled to begin school in the Fall of 2004." The petition claimed that once school started, "the current physical custody schedule will be impractical and not in the best interest of [Andrew]." Shane requested that the parties continue to have joint custody but that he be awarded primary residential custody and that Veronica be awarded reasonable periods of visitation when Andrew is not attending school.

On November 19, 2004, Veronica responded to Shane's petition by filing a petition of her own. Her petition was also titled as a petition to modify custody and was identical to Shane's petition in every aspect except that the names of the parties had been changed. For example, Veronica's petition alleged that a substantial change in circumstances had occurred in that Andrew was scheduled to begin school in the fall of 2004. The petition further alleged that once Andrew began school, the existing visitation schedule would be impractical and not in the best interests of Andrew. Finally, Veronica's petition requested that the parties continue to have joint custody but that she be awarded primary residential custody and that Shane be awarded reasonable periods of visitation when Andrew is not attending school.

Even though Veronica's petition was titled as a petition to modify custody, she was already the primary residential custodian, so she was clearly not seeking a modification of custody. However, the petition did ask for a modification of visitation, and hence, we shall treat her petition as a petition for a modification of visitation and refer to the petition that way throughout this disposition.

3

On May 25, 2005, a bifurcated hearing on the parties' pending petitions began. On the first day of the hearing, Shane presented evidence to support his petition to modify custody. The evidence included Shane's testimony that he believed that a substantial change in circumstances had occurred in that Veronica planned to leave the military and move to Texas with Andrew. Upon hearing that Veronica planned to move to Texas with Andrew, the circuit court directed Veronica to file a petition to remove. The hearing was continued to June 29, 2005. On May 27, 2005, Veronica filed a petition for leave to remove Andrew to the State of Texas.

On June 29, 2005, the hearing reconvened. Prior to hearing any evidence, the circuit court asked Shane's attorney where he stood on the petition for leave to remove. Shane's attorney responded: "[I]t seems to me that–that once [Veronica] took the child out of–out of the State of Illinois, that that's deemed a consent by my client. I just–I'd like to say that I could find law to the contrary, but I could not." Veronica's attorney then informed the court that the only reason she filed the petition for leave to remove was that the circuit court had requested her to do so in order to ensure that all her pleadings were in order. She continued: "My feeling is the same as [Shane's attorney], that it is not a necessary pleading, but *** in case [the circuit court] disagree[s] or the Appellate Court would disagree, I intend to prove my case on the Leave to Remove because–since there's a lesser burden for that than the custody, I was going to go ahead and do it. Not because I necessarily think I have to, but just in case somebody else feels that way ***." The circuit court then heard Veronica's evidence and both sides rested.

On August 19, 2005, the circuit court delivered a 29-page handwritten order. In its order, the circuit court found, "[N]either the Petitioner nor the Respondent has proven by clear and convincing evidence on the basis of facts that have arisen since

4

the prior orders of the Court[] that a modification of custody is necessary to serve the best interests of [Andrew]." The circuit court denied both petitions to modify and ruled that the parties should continue with the joint custody of Andrew, while Veronica remained the primary residential custodian.

The circuit court then turned to the petition to remove. The circuit court noted that Veronica sought leave to remove Andrew from the State of Illinois to the State of Texas. The circuit court noted that Veronica had the burden of proving that a removal from Illinois would be in Andrew's best interests. The circuit court then found that when the parties entered into the joint-parenting agreement, they both anticipated that they would "play an active role in the daily life of their son." The circuit court found that to allow Veronica to move with Andrew to Texas would "interfere [with] and disrupt the ability of [Shane] to have involvement and visitation with [Andrew] on a regular basis." The circuit court referenced section 609 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/609 (West 2004)) and analyzed the evidence presented in light of the factors set forth in *In re Marriage of Eckert*, 119 Ill. 2d 316 (1988). The circuit court found that Veronica had failed to prove that a removal from Illinois would be in the best interests of Andrew. The circuit court then concluded that it would be in the best interests of Andrew for his physical custody to remain in the Belleville area, where he would be in his familiar surroundings, attend the same school, and be allowed to have regular contact and involvement with Shane. Accordingly, the circuit court denied the petition to remove.

The circuit court then proceeded to modify the visitation schedule. In so doing, the circuit court modified visitation to the extent that Shane was awarded visitation on the first, third, and fourth weekends of each month from Friday at 6 p.m. until Sunday at 6 p.m. and on Tuesdays and Thursdays from 4 p.m. until 7 p.m.

during the school year. The circuit court further ordered that during the summer, Shane would have visitation from June 1 at 6 p.m. through August 10 at 6 p.m. but that, during this period, Veronica would have visitation on every Wednesday from 4 p.m. to 8 p.m. and every other weekend from Friday at 6 p.m. until Sunday at 6 p.m. The circuit court added that each party would be entitled to 14 consecutive days with Andrew during the summer. Finally, the circuit court ordered Veronica to take the necessary steps to immediately ensure that Andrew was enrolled in school for the 2005-2006 school year at the Washington School in Belleville, Illinois. Both parties appeal.

## Issues

On appeal, Veronica raises two issues. The first issue is whether the circuit court had the authority to consider and deny her petition for leave to remove. Assuming that the circuit court had the authority to deny her petition for leave to remove, the second issue is whether the circuit court's denial of the petition was against the manifest weight of the evidence. On cross-appeal, Shane argues that the circuit court's denial of his petition to modify custody was against the manifest weight of the evidence. We turn first to the removal issue.

The parties in this case were never married, and hence the issues are controlled by the Parentage Act (750 ILCS 45/1 *et seq.* (West 2004)). All actions brought under the Parentage Act are statutory in origin, and the circuit court's authority is limited to that granted to it under the Parentage Act. *In re Stella*, 353 Ill. App. 3d 415, 417 (2004). The circuit court has no inherent power under the Parentage Act. *In re Stella*, 353 Ill. App. 3d 415, 417 (2004).

In the instant case, we believe that the circuit court erred in directing Veronica

6

to file a petition for leave to remove, in considering the petition for leave to remove, and in denying the petition for leave to remove. Nothing in the Parentage Act or the custody provisions of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/601 *et seq.* (West 2004)) requires a parent who has previously removed a child from the State of Illinois, with the permission of the court, to seek leave to move that child to another state. Furthermore, nothing in the Parentage Act or the Marriage Act gives the court the authority to grant or deny leave to a parent who has already removed a child from the State of Illinois to move that child to another state. The Marriage Act, and now the Parentage Act through a 2003 amendment, only provides the court with the authority to grant or deny leave to remove a child "from Illinois." 750 ILCS 45/16 (West 2004); 750 ILCS 5/609 (West 2004). Accordingly, the circuit court erred in directing Veronica to file a petition for leave to remove, in considering the petition for leave to remove, and in denying the petition for leave to remove.

Next, to the extent that the circuit court considered Veronica's petition as a petition for leave to remove Andrew "from Illinois," the circuit court also erred. Nowhere in Veronica's petition does she request leave to remove Andrew "from Illinois." Furthermore, Veronica had already removed Andrew from Illinois in 2003 with the court's permission. Because Veronica and Andrew became residents of Alaska and because the Parentage Act and the Marriage Act address only petitions to remove a child "from Illinois," the circuit court erred in considering the petition to be a petition under section 609 of the Marriage Act for leave to remove Andrew "from Illinois." Therefore, because the circuit court had no authority to direct Veronica to file a petition for leave to remove, to consider a petition for leave to remove, or to deny a petition for leave to remove, we vacate that portion of the circuit

court's order denying Veronica's petition for leave to remove.

Our decision in the instant case is consistent with the appellate court's decision in *In re Marriage of Lange*, 307 Ill. App. 3d 303, 305 (1999). In *In re Marriage of Lange*, Susanna Lange had been granted leave to remove her children to Indiana. She subsequently filed a petition in an Illinois court to remove her children from Indiana to Texas. The circuit court denied the petition and Susanna appealed, arguing that the trial court had no authority to deny the petition. On appeal, the appellate court held as follows:

"The premise for the argument that the trial court did not have the authority to enter its order was based on the belief that the only statute authorizing the trial court to address removal of children was section 609 of the Marriage Act [citation]. Here, Susanna's motion in the trial court did not recite that it was made pursuant to section 609 of the Marriage Act. Although her argument in this court suggests Susanna has accepted the trial court's finding that this matter is controlled by section 609(a), this court need not accept the trial court's reasoning since it is the trial court's judgment, not its reasoning, that is being reviewed." *In re Marriage of Lange*, 307 Ill. App. 3d at 309.

In *In re Marriage of Lange*, the appellate court acknowledged that the trial court did not have the authority to consider a petition for leave to remove filed under section 609 of the Marriage Act but that it did have the authority to consider the move through its inherent authority to enforce the custody and visitation provisions of the judgment of dissolution. *In re Marriage of Lange*, 307 Ill. App. 3d at 310.

This brings us to the remaining issues before this court, which include the circuit court's denial of Shane's petition to modify custody, the circuit court's denial of Veronica's petition to modify visitation, and the court's modification of the visitation

8

schedule.  Because it is clear to this court that the circuit court's denial of Shane's petition to modify custody, the circuit court's denial of Veronica's petition to modify visitation, and the circuit court's decision to modify the visitation schedule, including its order that Andrew be enrolled in school at the Washington School in Belleville, were based on its belief that it had the authority to deny Veronica's petition for leave to remove Andrew from the State of Illinois and essentially compel Veronica to remain in Illinois, these decisions are reversed, and this cause is remanded for reconsideration.

Conclusion

For the foregoing reasons, the judgment of the circuit court of St. Clair County is vacated in part and reversed in part, and this cause is remanded for further proceedings.


Vacated in part and reversed in part; cause remanded.


SPOMER, P.J., and HOPKINS, J., concur.

NO. 5-05-0488

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* PARENTAGE OF ANDREW KALANI TAVARES, a Minor | ) | Appeal from the Circuit Court of St. Clair County. |
| (Shane Tavares, | ) | |
| Petitioner-Appellee and Cross-Appellant, | ) | |
| v. | ) | No. 01-F-590 |
| Veronica Rangel, | ) | Honorable William C. Norton, |
| Respondent-Appellant and Cross-Appellee). | ) | Judge, presiding. |

_____

**Opinion Filed**:             February 10, 2006

_____

**Justices**:          Honorable Thomas M. Welch, J.

                       Honorable Stephen L. Spomer, P.J., and
                       Honorable Terrence J. Hopkins, J.,
                       Concur

_____

**Attorneys for Appellant**          Susan Parnell Wilson, 14 South Second Street, Belleville, IL 62220; Clyde Kuehn, 23 Public Square, Suite 450, Belleville, IL 62220

_____

**Attorney for Appellee**          P.K. Johnson V, Johnson & Johnson, 11 South High Street, Belleville, IL 62220

_____